JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
RACHEL RAGNI LARRENAGA (241061)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: rfranklin@murraylaw.com
Email: rragni@murraylaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>**PAMPAS PALO ALTO, LLC,**<br>A California Limited Liability Company,<br><br>Debtor.<br><br>529 Alma Street<br>Palo Alto, California 94301<br><br>Employer Tax I.D. No.: 02-0806958 | Case No. 11-50029-CN-11<br><br>Chapter 11<br><br><u>Disclosure Statement Hearing</u><br><br>Date: October 27, 2011<br>Time: 11:00 a.m.<br>Place: United States Bankruptcy Court<br>280 S. First St., Room 3070<br>San Jose, CA 95113<br>Judge: Honorable Charles Novack<br><br><u>Hearing on Plan Confirmation</u><br>Date: TBD<br>Time: TBD |

**<u>DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION</u>**
**(DATED SEPTEMBER 22, 2011)**

Case: 11-50029   Doc# 117   Filed: 09/22/11   Entered: 09/22/11 16:51:32   Page 1 of
53

# TABLE OF CONTENTS

ARTICLE I. EXECUTIVE SUMMARY OF TREATMENT OF CREDITORS AND
INTEREST HOLDERS UNDER THE PLAN ................................................................1

ARTICLE II. INTRODUCTION ...............................................................................................2

ARTICLE III. DEFINITIONS ..................................................................................................3

ARTICLE IV. OVERVIEW OF THE CHAPTER 11 PROCESS AND SUMMARY OF THE
PLAN TREATMENT OF CLAIMS AND INTERESTS ...............................................4

    4.1.    The Chapter 11 Process. ...........................................................................4
    4.2.    Liquidation Analysis. ...............................................................................4

ARTICLE V. THE BANKRUPTCY FILING ...........................................................................5

ARTICLE VI. HISTORY AND DESCRIPTION OF THE DEBTOR'S BUSINESS .................5

    6.1.    Nature of the Debtor's Business. ..............................................................5
    6.2.    Events Leading to Debtor's Bankruptcy Case. .........................................6

ARTICLE VII. SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE ...................6

    7.1.    Retention of Professionals. ........................................................................6
    7.2.    Appointment of Responsible Individual. ...................................................6
    7.3.    Relief From Stay. ......................................................................................7
    7.4.    Real Property Lease. .................................................................................7
    7.5.    Plan Exclusivity. .......................................................................................8
    7.6.    Prior Disclosure Statement and Plan. ........................................................8
    7.7.    Other Bankruptcy Administration Matters. ...............................................8

ARTICLE VIII. THE DEBTOR'S ASSETS AND LIABILITIES .............................................9

    8.1.    Balance Sheets; Financial Reporting. ........................................................9
    8.2.    Cash on Hand. ...........................................................................................9
    8.3.    Assets. .......................................................................................................9
    8.4.    Liabilities. .................................................................................................9

ARTICLE IX. THE PLAN OF REORGANIZATION ................................................................9

    9.1.    Overview of the Plan. ...............................................................................9
    9.2.    Claims and Interests and Treatment under the Plan. ................................10
    9.3.    Summary of Claims and Interests; Treatment. ........................................10

        9.3.1    Administrative Expense Claims - Description. .........................10
        9.3.2    United States Trustee Fees. ......................................................12
        9.3.3    Tax Claims. .............................................................................12
        9.3.4    Class 1 (Priority Claims) – Unimpaired. ..................................12
        9.3.5    Class 2 (Allowed Current Employee Vacation Claims) – Impaired. ..............13
        9.3.6    Class 3 (Allowed General Unsecured Claims) – Impaired. .......13
        9.3.7    Class 4 (Interest Holders) – Unimpaired. .................................14

Case 11-50029   Doc# 117   Filed 09/22/11   Entered 09/22/11 15:12:52

9.4.     Implementation of the Plan of Reorganization. ...................................................14

      9.4.1     Restaurant Operation. ......................................................................14
      9.4.2     Confirmation Deposit. .....................................................................14
      9.4.3     Payments On The Effective Date.....................................................14

9.5.     Distributions...........................................................................................15

      9.5.1     Distribution Account........................................................................15
      9.5.2     Distribution Addresses.....................................................................15
      9.5.3     Withholding Taxes...........................................................................15

9.6.     Responsible Person. .................................................................................15
9.7.     Disbursing Agent. ....................................................................................17
9.8.     De Minimis Distributions. ........................................................................17
9.9.     Unclaimed Distributions. .........................................................................17
9.10.     Tax Returns, Payments and Refunds. ........................................................17
9.11.     Further Orders. ........................................................................................17
9.12.     Post Confirmation Employment of Personnel. ..........................................18
9.13.     Post-Confirmation Compensation and Reimbursement of Professionals. ...................18
9.14.     Post-Confirmation Notice. ........................................................................19
9.15.     Revesting of Property of the Estate. ..........................................................19
9.16.     Post-Confirmation Reports, Fees and Final Decree.....................................19

      9.16.1     United States Trustee Fees. ..............................................................19
      9.16.2     Post-Confirmation Reports. .............................................................19
      9.16.3     Final Decree. ..................................................................................20

ARTICLE X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....................................20

10.1.     Treatment of Executory Contracts and Unexpired Leases. ..........................20
10.2.     Assumption of Executory Contracts and Unexpired Leases..........................20
10.3.     Effect of Assumption of Executory Contracts and Unexpired Leases. ..........21
10.4.     Adding and Removing Executory Contracts and Unexpired Leases...............21
10.5.     Defaults. ..................................................................................................21
10.6.     Rejection of Executory Contracts and Unexpired Leases.............................21
10.7.     Rejection Claims. .....................................................................................21

ARTICLE XI. PROOFS OF CLAIM; OBJECTIONS ........................................................22

11.1.     Time for Filing Proofs of Claim. ...............................................................22
11.2.     Ownership and Transfers of Claims. ..........................................................22
11.3.     Amendments to Claims..............................................................................22
11.4.     Claim Objections. ....................................................................................23
11.5.     Disallowance of Claims. ...........................................................................23
11.6.     Reserve Accounts. ....................................................................................24
11.7.     Distributions.............................................................................................24

ARTICLE XII. DEFAULT .........................................................................................24

ARTICLE XIII. PRESERVATION OF RETAINED CLAIMS AND AVOIDANCE ACTIONS ....................................................................................25

13.1.     All Retained Claims and Avoidance Actions and Rights are Preserved. ....................25

ARTICLE XIV. RETENTION OF JURISDICTION ........................................................26

JWM/RRL
S:\Pampas\500389 LLC\DS and Plan\DS\DS.3.final.wpd

ii

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION (DATED SEPTEMBER 22, 2011)

Case 8:09-bk-17970-ES    Doc 117    Filed 09/22/11    Entered 09/22/11 16:38:09    Desc
Main Document    Page 3 of
53

ARTICLE XV. EFFECT OF CONFIRMATION................................................26

    15.1.   Binding Effect of Plan. ...............................................27
    15.2.   Full Satisfaction of Claims and Interests. .................27
    15.3.   Judgments Null and Void......................................27
    15.4.   Injunction. ..................................................27
    15.5.   Reservation of Powers. ........................................27
    15.6.   Preservation of Insurance. ....................................28

ARTICLE XVI. CONDITIONS PRECEDENT ...........................................28

    16.1.   Conditions Precedent. .........................................28
    16.2.   Waiver of Conditions. .........................................28

ARTICLE XVII. OTHER PLAN PROVISIONS .........................................28

    17.1.   Exemption from Stamp, Transfer and Other Taxes. .........28
    17.2.   No Admissions. ...............................................28
    17.3.   Revocation of the Plan. ......................................29
    17.4.   Successors and Assigns. .......................................29
    17.5.   Nonconsensual Confirmation ................................29
    17.6.   Destruction of Records. .......................................29
    17.7.   Saturday, Sunday and Legal Holiday. .....................29
    17.8.   Plan Interpretation. ..........................................29
    17.9.   Setoff/Recoupment. ..........................................30
    17.10.  Notices. ........................................................30
    17.11.  Reservation of Rights..........................................30
    17.12.  Exhibits. ......................................................31

ARTICLE XVIII. RISK FACTORS .......................................................31

    18.1.   Additional Claims Risks. ......................................31
    18.2.   Estimation of Claims and Distribution Risks.................31
    18.3.   Bankruptcy Risks. ............................................32

ARTICLE XIX. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .........33

    19.1.   Introduction. ..................................................33
    19.2.   IRS CIRCULAR 230. ..........................................34
    19.3.   Consequences to the Debtor. .................................34
    19.4.   Consequences to Interest Holders. .........................35
    19.5.   Consequences to Creditors Generally. ......................35
    19.6.   Backup Withholding. ..........................................37

ARTICLE XX. VOTING PROCEDURES................................................38

    20.1.   Definition of Impairment. .....................................38

ARTICLE XXI. CONFIRMATION PROCEDURES; OBJECTIONS TO CONFIRMATION.........41

    21.1.   Confirmation Hearing. ........................................41
    21.2.   Requirements for Confirmation of the Plan. ................42
    21.3.   Compliance with Confirmation Requirements. ..............44
    21.4.   Cramdown.....................................................44

Case: 09-50039 Doc# 117 Filed: 09/22/11 Entered: 09/22/11 ... 53

1   ARTICLE XXII. BEST INTERESTS TEST............................................................45

2   ARTICLE XXIII. POST-CONFIRMATION MANAGEMENT .......................................47

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 8:Pamb-500009-PC  Doc 447  Filed 09/22/11  Entered: 09/22/11 15:00:22  Desc Main
53

# TABLE OF EXHIBITS

| | |
|---|---|
| **EXHIBIT A** | RESTAURANT APPRAISAL |
| **EXHIBIT B** | LIQUIDATION ANALYSIS |
| **EXHIBIT C** | DEBTOR'S AUGUST 2011 MONTHLY OPERATING REPORT |
| **EXHIBIT D** | DEBTOR'S PROJECTED CASH FLOW AND BUSINESS PLAN |

## ARTICLE I.

### EXECUTIVE SUMMARY OF TREATMENT OF
### CREDITORS AND INTEREST HOLDERS UNDER THE PLAN[1]

| CLASS | DESCRIPTION | TREATMENT |
|---|---|---|
| Class 1 | Allowed Priority Claims | Creditors holding Allowed Class 1 Claims will be paid cash in full on the Effective Date of the Plan. |
| Class 2 | Allowed Current Employee Vacation Claims | Creditors holding Allowed Class 2 Claims will receive on the Effective Date, a credit for accrued vacation in an amount equal to the Allowed Current Employee Vacation Claim. |
| Class 3 | Allowed General Unsecured Claims | Creditors holding Allowed Class 3 Claims will receive a total of ten percent (10%) of their Allowed Claims in six (6) equal annual installments commencing on the first day of the first calendar month following the Effective Date Anniversary. |
| Class 4 | Interest Holders | The Interests of the Interest Holders remain unaltered. |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

_____

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the DEBTOR'S PLAN OF REORGANIZATION (DATED SEPTEMBER 22, 2011).

Case: 11-50029   Doc# 111   Filed: 09/22/11   Entered: 09/22/11 16:57:32   Page 7 of 53

## ARTICLE II.

## INTRODUCTION

Pampas Palo Alto, LLC, (the "**Debtor**") hereby submits its DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION (DATED SEPTEMBER 22, 2011) (the "**Disclosure Statement**") in connection with the solicitation of acceptances of the DEBTOR'S PLAN OF REORGANIZATION (DATED SEPTEMBER 22, 2011), (the "**Plan**"). The Plan is being transmitted to Creditors and Interest Holders of the Debtor with this Disclosure Statement.

Chapter 11 of the Bankruptcy Code sets forth the rules and procedures under which financially distressed entities may be reorganized or liquidated pursuant to a plan presented to Creditors and equity security holders for consideration and approval. Confirmation (approval) of the Plan is the culmination of that process.

The Effective Date of the Plan will be a date designated by the Debtor and will be no less than 15 calendar days and no more than 60 calendar days following the Confirmation Date or, in the event that the Effective Date of the Plan is enjoined or stayed by a court of competent jurisdiction for any period of time, no later than 30 calendar days following expiration of such stay or injunction.

The Plan sets forth the Debtor's proposal for the restructuring of its finances and the satisfaction, discharge and/or cancellation of all Claims against the Debtor. Creditors and Interest Holders should thoroughly review both the Plan and the Disclosure Statement before deciding whether to accept or reject the Plan. The purpose of the Disclosure Statement is to provide adequate information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of Claims and Interests of the relevant Class to make an informed judgment about the Plan.

Before the Debtor's Disclosure Statement may be used in connection with an acceptance or rejection of the Plan, the Bankruptcy Court, after a noticed hearing, must have approved the Disclosure Statement as containing adequate information to enable Creditors, Interest Holders and parties in interest to make an informed judgment on whether or not to accept or reject the Debtor's Plan.

Case: 11-50029   Doc# 117   Filed: 09/22/11   Entered: 09/22/11 16:51:32   Page 8 of
53

1       The Bankruptcy Court's approval of the Disclosure Statement, however, does not constitute

2  an endorsement of the Plan by the Court.

3       Creditors and Interest Holders should read this Disclosure Statement and the Plan in their

4  entirety prior to voting by way of the enclosed Ballot, which must be completed and returned.

5       No solicitation of votes may be made except pursuant to this Disclosure Statement and

6  Section 1125 of the Bankruptcy Code.  In voting on the Plan, Creditors and Interest Holders should

7  not rely on any information relating to the Debtor other than that contained in this Disclosure

8  Statement, the Plan, and all exhibits hereto and thereto, and such other materials approved by the

9  Bankruptcy Court.

10       The Plan's objective is to effect a reorganization of the Debtor's financial affairs and to

11  maximize the value of the Debtor's assets for the benefit of Creditors.  The Debtor believes that the

12  restructuring contemplated by the Plan will yield a recovery to Creditors and Interest Holders at least

13  as much as could be achieved through other restructuring alternatives or liquidation under Chapter 7

14  of the Bankruptcy Code.  The Plan divides Creditors and Interest Holders into Classes based on their

15  legal rights and interests, and provides for the satisfaction, cancellation or disallowance of Claims

16  and Interests from the Debtor's assets.

## ARTICLE III.

### DEFINITIONS

19       All definitions contained in Article I of the Plan are incorporated herein by reference.  Other

20  terms are defined herein for convenience only.  If a capitalized term is not defined herein or in the

21  Plan, but is defined in the Bankruptcy Code or Bankruptcy Rules, such term will have the meaning

22  given to that term in the Bankruptcy Code or Bankruptcy Rules unless the context of the Disclosure

23  Statement clearly requires otherwise.  References to a code section are references to the Bankruptcy

24  Code, except as otherwise stated.

25  ///

26  ///

27  ///

28  ///

Case: 11-50029   Doc# 111   Filed: 09/22/11   Entered: 09/22/11 10:50:32   Page 9 of
53

**ARTICLE IV.**

**OVERVIEW OF THE CHAPTER 11 PROCESS
AND SUMMARY OF THE PLAN TREATMENT OF CLAIMS AND INTERESTS**

### 4.1. The Chapter 11 Process.

Chapter 11 of the Bankruptcy Code contains numerous provisions, the general effect of which is to provide the Debtor with "breathing space" within which to propose a restructuring of its obligations to third parties. The filing of a Chapter 11 bankruptcy petition creates a bankruptcy "estate" comprised of all of the property interests of a debtor. Unless a trustee is appointed by the Bankruptcy Court for cause (no trustee has been appointed in this Case), a debtor remains in possession and control of its assets as a "debtor in possession." The debtor may continue to operate its business in the ordinary course on a day to day basis without Bankruptcy Court approval. Bankruptcy Court approval is only required for various enumerated transactions (such as certain financing transactions) and transactions out of the ordinary course of a debtor's business. The filing of the bankruptcy petition gives rise to what is known as the "automatic stay" which, generally, enjoins creditors from taking any action to collect or recover obligations owed by a debtor prior to the commencement of a Chapter 11 case. The Bankruptcy Court can, however, grant relief from the automatic stay under certain specified conditions or for cause.

A Chapter 11 debtor may propose a plan providing for the reorganization of the debtor. A plan may either be consensual or non-consensual and provides, among other things, for the treatment of the claims of creditors and interests of equity security holders.

### 4.2. Liquidation Analysis.

The Debtor operates its Restaurant at its principal place of business in Palo Alto, California. Prior to the commencement of the Case, the Debtor undertook a significant remodel of its commercial space, spending over $2 million in renovations, and expending additional funds for the purchase of restaurant equipment, inventory and furnishings. The Plan provides for the continued operation of the Restaurant and the Debtor believes that, as more fully described herein, under all circumstances, Creditors will receive as much under the Plan as they would if the Case were converted to a case under Chapter 7 of the Bankruptcy Code.

After the commencement of the Case, the Debtor commissioned an appraisal of the Restaurant by BBG, Ltd. ("**BBG**") which specializes in the leasing and sale of restaurants throughout the nine (9) county San Francisco Bay Area. BBG considered valuing the Restaurant as a going-concern or asset-sale approach and utilized the going-concern basis. BBG opined that the Restaurant would sell for anywhere between $220,000 to $440,000. A copy of this appraisal is attached hereto as **Exhibit "A."**

A liquidation of the Restaurant assumes the cancellation of leases, the ceasing of business operations, and the liquidation of equipment, furnishings and inventory. Based on the liquidation analysis, which is attached hereto as **Exhibit "B"**, the unsecured creditors would receive less than 1% of their claims in a liquidation scenario.

## ARTICLE V.

## THE BANKRUPTCY FILING

On January 3, 2011 (the "**Petition Date**"), the Debtor filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code and is presently operating its business as a debtor in possession pursuant to the provisions of Bankruptcy Code Sections 1107 and 1108. This Disclosure Statement and the accompanying Plan constitute the Debtor's proposal for an orderly reorganization of the Debtor's financial affairs and payment to the Creditors in accordance with the relevant provisions of the Bankruptcy Code.

## ARTICLE VI.

## HISTORY AND DESCRIPTION OF THE DEBTOR'S BUSINESS

### 6.1.    Nature of the Debtor's Business.

The Debtor was formed in 2007 to build and operate the Restaurant in Palo Alto, California specializing in Brazilian "churrasco" style fare. Located at 529 Alma Street, the Restaurant occupies 8,300 square feet in a tri-level space and seats 230. The restaurant opened to the public on April 29, 2008. Since that time, the Debtor has been recognized as the "Best New Restaurant" in Palo Alto, featured on the Bay Area Backroads television show, named to the Michelin Book for the years 2009, 2010 and 2011 (one of 40 restaurants in Northern California), Zagat reviewed, designated as an Opentable Favorite Restaurant, and graded above 4 out of 5 possible stars on Yelp restaurant

Case: 11-30029   Doc# 117   Filed: 09/22/11   Entered: 09/22/11 16:31:32   Page 11 of 53

reviews by diners. The operations of the Debtor have been profitable and represent a viable long-term business.

**6.2.  Events Leading to Debtor's Bankruptcy Case.**

The Debtor retained Devcon Construction, Inc. ("**Devcon**") to construct its facility. At some point a dispute arose between the Debtor and Devcon regarding the construction and whether certain change orders were authorized. On September 15, 2008, Devcon filed a complaint against the Debtor in the Santa Clara County Superior Court (the "**Superior Court**") initiating the Superior Court Action. The matter went to a jury trial on January 25, 2010. Thereafter, on September 24, 2010, the Judgment was entered against the Debtor in excess of $800,000. Devcon filed a Memorandum of Costs, which the Debtor challenged by filing a Motion to Tax Costs. Devcon also filed a motion in the Superior Court for an order awarding attorneys' fees in excess of $650,000 (the "**Attorneys' Fees Motion**"). The Debtor has not been required to file opposition to the Attorneys Fees Motion by virtue of the automatic stay. The Debtor filed a notice of appeal, commencing the Appeal on December 22, 2010. The Appeal has been stayed by the California Court of Appeal as a result of the petition filed by the Debtor commencing this bankruptcy case. Devcon has indicated that it may seek relief from the automatic stay to allow it to proceed with the Attorneys' Fees Motion and to allow the Appeal to proceed.

**ARTICLE VII.**

**SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE**

**7.1.  Retention of Professionals.**

The Debtor has retained the following professionals to assist it in this case: (i) Murray & Murray, A Professional Corporation ("**Murray & Murray**") as its general bankruptcy counsel; (ii) Allen Allen Matkins Leck Gamble Mallory & Natsis LLP ("**Allen Matkins**") as its special litigation counsel; and (iii) Meisser & Seales, LLP ("**Meisser**") as its accountants.

**7.2.  Appointment of Responsible Individual.**

Pursuant to this Court's Order of January 6, 2011, Timothy Reynders has been appointed as the Debtor's Responsible Individual.

///

### 7.3. Relief From Stay.

On January 31, 2011, the Debtor and Devcon filed the STIPULATION FOR ENTRY OF ORDER MODIFYING AUTOMATIC STAY (the "**Stipulation**") in the Bankruptcy Court. In the Stipulation, the parties stipulated to the entry of an order by the Bankruptcy Court modifying the automatic stay provisions of 11 U.S.C. § 362(a) for the limited purpose of allowing the Superior Court to issue its ruling on the Debtor's Motion to Tax Costs. The Superior Court has issued its ruling, granting in part and denying in part the Motion to Tax Costs.

On April 26, 2011, the Debtor, Devcon and the American Contractors Indemnity Company (the "**Surety**") filed the SECOND STIPULATION FOR ENTRY OF ORDER MODIFYING AUTOMATIC STAY (the "**Second Stipulation**"). In the Second Stipulation the Debtor, Devcon and the Surety stipulated to the entry of an order by the Bankruptcy Court modifying the automatic stay provisions of 11 U.S.C. § 362(a) for the limited purpose of allowing Devcon to make demand from the Surety for the full amount of the Judgment and to allow the Surety to pay the full demand and seek reimbursement from the collateral posted by the Debtor for the lien bond issued by the Surety (the "**Lien Bond**"). Thereafter, Devcon made demand on the Surety and the Surety paid $677,917.53 to Devcon. The Surety also returned to the Debtor $70,226.00, the remaining collateral for the Lien Bond.

### 7.4. Real Property Lease.

The Debtor requested an extension of time to assume or reject its unexpired nonresidential real property lease. Following a hearing on April 8, 2011, on April 18, 2011, the Court entered its ORDER GRANTING MOTION TO EXTEND TIME TO ASSUME OR REJECT UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASE which extended the deadline for the Debtor to assume or reject the lease of commercial property located at 529 Alma Street in Palo Alto, California to August 1, 2011. On June 30, 2011, the Debtor filed its MOTION FOR ORDER AUTHORIZING DEBTOR TO ASSUME REAL PROPERTY LEASE (11 U.S.C. § 365), whereby the Debtor sought authority from the Court to assume the Debtor's unexpired real property lease with Charles J. Keenan, II, Trustee of the Keenan Family Trust. On July 29, 2011, following the hearing on this motion, the Court entered the ORDER GRANTING MOTION FOR ORDER AUTHORIZING DEBTOR TO ASSUME REAL PROPERTY LEASE (11 U.S.C. § 365).

### 7.5. Plan Exclusivity.

The Debtor requested from the Court an order extending the exclusive period during which only the Debtor may file a plan and solicit acceptances thereof. Following a hearing on April 8, 2011, on April 19, 2011, the Court entered its ORDER GRANTING MOTION FOR ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTOR MAY FILE A PLAN AND SOLICIT ACCEPTANCES THEREOF whereby the exclusive period during which only the Debtor may file a plan was extended through and including November 3, 2011, and the exclusive period during which only the Debtor may solicit acceptances of the plan was extended through and including January 4, 2012.

### 7.6. Prior Disclosure Statement and Plan.

On July 22, 2011, the Debtor filed its DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION (DATED JULY 21, 2011) (the "**July Disclosure Statement**") and the DEBTOR'S PLAN OF REORGANIZATION (DATED JULY 21, 2011) (the "**July Plan**"). On August 18, 20011, Pampas International, L.L.C. ("**Pampas International**") filed an objection to the July Disclosure Statement, claiming, among other grounds, that it was entitled to an administrative expense claim based on the Debtor's use of its "Pampas" mark under a license agreement between the Debtor and Pampas International (the "**License Agreement**"). The Debtor disputes that it owes a pre-petition claim or administrative expense claim to Pampas International.

### 7.7. Other Bankruptcy Administration Matters.

The Debtor's Statement of Financial Affairs and Schedules ("**Schedules**") were initially due to be filed on or before January 17, 2011. The Debtor filed its EX PARTE MOTION BY DEBTOR FOR ORDER AUTHORIZING EXTENSION OF TIME TO FILE SCHEDULES AND STATEMENT OF FINANCIAL AFFAIRS. On January 13, 2011, the Court entered its order extending the filing deadline to January 31, 2011. The Statement of Financial Affairs and Schedules were filed with the Court on January 31, 2011. Certain amendments to the Statement of Financial Affairs and Schedules were filed with the Court on February 23, 2011 and the Debtor anticipates filing further amendments in the near term. The Debtor is current on its Monthly Operating Reports.

The Debtor has responded to information requests by the United States Trustee and has attended meetings as requested.

Case: 11-50029    Doc# 117    Filed: 09/22/11    Entered: 09/22/11 16:31:32    Page 14 of
53

The Debtor submitted its CHAPTER 11 STATUS CONFERENCE STATEMENT on June 30, 2011, and attended the Chapter 11 status conference before this Court on July 7, 2011.

## ARTICLE VIII.

## THE DEBTOR'S ASSETS AND LIABILITIES

**8.1.** **Balance Sheets; Financial Reporting.**

The Debtor has filed Monthly Operating Reports ("**MOR**") in this Case reporting all receipts and disbursements during the pendency of this Case. Attached hereto as **Exhibit "C"** is the most recently filed MOR (August 2011).

**8.2.** **Cash on Hand.**

The Debtor's August 2011 MOR reflects cash on hand of $321,836.

**8.3.** **Assets.**

The Debtor operates the Restaurant and serves a Brazilian "churrasco" style fare. The typical gross sales per month average $200,000 to $300,000. The Debtor also has restaurant machinery/equipment and furniture/fixtures, reflected in its Schedules as having a value of $75,000 and $53,000, respectively. The Debtor also maintains food, liquor and wine inventories which are replenished every month based on the estimation of goods sold.

**8.4.** **Liabilities.**

The liabilities of and equity security interests in the Debtor are reflected in Article IX below.

## ARTICLE IX.

## THE PLAN OF REORGANIZATION

**9.1.** **Overview of the Plan.**

The following is a brief overview of the material provisions of the Plan and is qualified in its entirety by reference to the full text of the Plan. Creditors, Interests Holders and other parties in interest are urged to review the Plan and Disclosure Statement in their entirety.

The key features of the Debtor's proposed Plan include the following:

- Profitable operation of the Restaurant as more fully described herein;

- Satisfaction or disallowance of Claims as more fully set forth herein; and

- Assumption of executory contracts and unexpired leases as more fully

Case: 11-30029   Doc# 117   Filed: 09/22/11   Entered: 09/22/11 16:31:52   Page 15 of 53

described in Article X herein.

## 9.2. Claims and Interests and Treatment under the Plan.

The treatment under the Plan of Allowed Claims and Allowed Interests is in full and complete satisfaction of the legal, contractual, and equitable rights that each Person holding an Allowed Claim or an Allowed Interest may have in or against the Debtor or its property. This treatment supersedes and replaces any agreements or rights those entities have in or against the Debtor or its property. All Distributions under the Plan will be tendered to the Person holding the Allowed Claim or the Allowed Interest. **EXCEPT AS SPECIFICALLY SET FORTH IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM OR INTEREST THAT IS NOT AN ALLOWED CLAIM OR ALLOWED INTEREST.**

## 9.3. Summary of Claims and Interests; Treatment.

The Claims against and Interests in the Debtor and their treatment under the Plan are summarized below:[2]

### 9.3.1 Administrative Expense Claims - Description.

Administrative Claims, generally, are Claims that arise during the pendency of the Chapter 11 case and, in business cases, are generally entitled to first priority in payment, pursuant to section 507(a)(2) of the Bankruptcy Code. These include Claims for: (a) costs or expenses of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the Bankruptcy Estate incurred on or after the Petition Date and through and including Confirmation; (b) any cure amounts that must be paid in connection with the assumption of executory contracts or unexpired leases of the Debtor under Section 365 of the Bankruptcy Code; (c) fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); (d) allowed compensation and costs for professional services under Sections 330 and 331 of the Bankruptcy Code or otherwise; and (e) the value of any goods received by the Debtor within 20 days before the Petition Date in which the goods have been sold to the Debtor in the ordinary course of

---

[2] The Court established a claims bar date of May 10, 2011 for the filing of non-governmental proofs of claim, and July 5, 2011 for the filing of governmental proofs of claim.

business.

### 9.3.1.1    Administrative Expense Claims – Estimate.

The Debtor anticipates that the only Administrative Claims that will remain unpaid as of the Effective Date, if any, will be the fees and costs of professionals, which as of August 31, 2011 are estimated to be as follows: Murray & Murray ($168,447.42) and Meisser ($3,833.00). All professional fees are subject to the approval of the Bankruptcy Court on a duly noticed application for compensation. Pampas International asserts that it holds an administrative expense claim. The Debtor disputes the validity of any administrative claim asserted by Pampas International.

### 9.3.1.2    Administrative Expense Claims – Treatment.

Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Claim, each holder of an Allowed Administrative Claim will be paid in cash, in full, upon the later of: (a) the Effective Date; (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Administrative Claim; and (c) if such Claim is incurred after the Petition Date in the ordinary course of the Debtor's business, within such time as payment is due pursuant to the terms giving rise to such Claim or as otherwise authorized by the Bankruptcy Court.

The foregoing is in full and final satisfaction of all Administrative Claims.

### 9.3.1.3    Administrative Expense Claims – Deadline for Requests for Payment.

Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code, other than by the Debtor's professionals, must be filed on or before the Administrative Claims Bar Date. If the holder of an asserted Administrative Claim does not file and serve a request for payment of such Claim on or before that date, the holder will be forever barred from asserting such Claim or receiving any payment on account of such Claim.

### 9.3.1.4    Deadline for Objections.

Any objection to the allowance of an Administrative Claim must be filed by the Administrative Claim Objection Deadline. If no objection to the applicable Administrative Claim is filed on or before the Administrative Claims Bar Date, such Administrative Claim will be deemed Allowed as of that date.

Case: 11-30029    Doc# 177    Filed: 09/22/11    Entered: 09/22/11 13:31:32    Page 17 of 53

### 9.3.2    <u>United States Trustee Fees.</u>

Quarterly fees owed to the United States Trustee will be paid by the Debtor when due in accordance with applicable law and the Debtor will continue to file reports to show the calculation of such fees for the Bankruptcy Estate until the Case is closed under Bankruptcy Code Section 350.

### 9.3.3    <u>Tax Claims.</u>

Certain Claims by governmental units, primarily tax claims, are entitled to priority over pre-petition Claims of general unsecured Creditors pursuant to Section 507(a)(8) of the Bankruptcy Code. The Debtor scheduled a priority claim of $41,392.82 owed to the California State Board of Equalization for sales tax. Additionally, there are $11,317.63 in filed Tax Claims. The Debtor believes that of this amount only a portion of the claim of the Internal Revenue Claim will be allowed. The Debtor has filed the necessary paperwork for the review of this claim and believes the Internal Revenue Claim will be amended once the discrepancy has been reconciled. Nevertheless, the Debtor has budgeted full payment of the Tax Claims on the Effective Date. Except to the extent that the holder of a particular Tax Claim, if any, has agreed to a less favorable treatment of such Claim, each holder of a Tax Claim shall be paid in cash, in full upon the later of: (a) the Effective Date; or (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Claim. The foregoing is in full and final satisfaction of all Tax Claims.

### 9.3.4    <u>Class 1 (Priority Claims) – Unimpaired.</u>

Class 1 consists of all Allowed Claims entitled to priority under Bankruptcy Code Section 507(a) other than unclassified Section 503(b) Administrative Claims and Section 507(a)(8) Tax Claims described above. A preliminary review of the Debtor's books and records indicates that there are no Class 1 Priority Claims, and the Debtor estimates that on the Effective Date of the Plan, there will be no Allowed Class 1 Claims. Except to the extent that the holder of a particular Allowed Class 1 Claim, if any, has agreed to a less favorable treatment of such Claim, each holder of an Allowed Class 1 Claim shall be paid in cash, in full upon the later of: (a) the Effective Date; or (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Claim. The foregoing is in full and final satisfaction of all Class 1 Claims.

The holders of Class 1 Claims, if any, are unimpaired under the Plan and are presumed to

Case: 11-50029    Doc# 117    Filed: 09/22/11    Entered: 09/22/11 16:51:52    Page 18 of 53

have accepted the Plan. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

### 9.3.5    Class 2 (Allowed Current Employee Vacation Claims) – Impaired.

Class 2 consists of all Allowed Current Employee Vacation Claims, not included or provided for in any other class, and including without limitation, Claims by current employees of the Debtor for paid time off, accrued before or after the Petition Date but unpaid as of the Effective Date. A preliminary review of the Debtor's books and records indicates that there are approximately $9,442.31 in Current Employee Vacation Claims. Except to the extent that the holder of a particular Allowed Class 2 Claim, if any, has agreed to a less favorable treatment of such Claim, each holder of an Allowed Class 2 Claim shall receive on the Effective Date, or as soon thereafter as practicable, a credit of accrued vacation in an amount equal to the Allowed Current Employee Vacation Claim. After the Effective Date, a holder of an Allowed Current Employee Vacation Claim shall be entitled to use the vacation credited to such holder in the ordinary course of business and in a manner consistent with the employment policies of the Reorganized Debtor and shall have all of the rights provided by applicable law with respect to accrued vacation. Persons whose employment with the Debtor is terminated shall receive at termination payment in full of the remaining amount owing on the Allowed Current Employee Vacation Claim. The foregoing is in full and final satisfaction of all Class 2 Claims.

The holders of Class 2 Claims are impaired. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

### 9.3.6    Class 3 (Allowed General Unsecured Claims) – Impaired.

Class 3 consists of all Allowed General Unsecured Claims not included or provided for in any other class, and including without limitation, all general unsecured claims incurred by the Debtor prior to the Petition Date, including Rejection Claims, but excluding Administrative Claims, Priority Claims, and Tax Claims. Timothy Reynders and Masumi Osaki are part of Class 3. The Debtor scheduled $5,740,279.04 on Schedule F, additional claims have been filed, and during the course of the case the Devcon claim has been reduced by the payment of the Lien Bond by the Surety to Devcon. The holders of Allowed Class 3 Claims will receive, on account of such Claim(s),

JWM/RRL
K:\Pampas Baby\Ch 11\DOC\Plan and Plan\DS\Stmt v3.0.v2
13
DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION DATED SEPTEMBER 22, 2011

Case: 11-30029    Doc# 117    Filed: 09/22/11    Entered: 09/22/11 16:51:31    Page 19 of 53

a total of ten percent (10%) of their Claims. Payments will be made in six (6) equal yearly installments commencing on the first day of the first calendar month following the Effective Date Anniversary. The foregoing is in full and final satisfaction of any and all Class 3 Claims.

Class 3 is impaired. All Claims are subject to verification and are likely to be reduced following resolution of Disputed Claims, including mitigation and offset as applicable.

### 9.3.7 Class 4 (Interest Holders) – Unimpaired.

Class 4 consists of all Interests in the Debtor. The Interests of Interest Holders as defined in the Plan remain unaltered.

### 9.4. Implementation of the Plan of Reorganization.

The Plan provides as follows:

### 9.4.1 Restaurant Operation.

The Reorganized Debtor will continue to operate its Restaurant and will use cash on hand and cash generated from business operations to perform its obligations under the Plan. The Debtor believes that through the operation of the Restaurant, all Claims will be paid pursuant to the provisions of the Plan. The Debtor has projected conservative growth in sales revenue in the business plan through the Plan term. Annual sales growth through May 2011 is up over 14% from the same period in 2010. While this level of sales growth may not be sustainable long-term, the financial model during the Plan term only reflects a 3% annual growth rate in sales. Expansion into offsite catering, an expansion the Debtor anticipates in 2011, will supplement the revenue growth and assure the fiscal success of the Plan as submitted. A detailed projection of the Debtor's cash flow demonstrating the Debtor's ability to pay its Claims is detailed in the DEBTOR'S PROJECTED CASH FLOW AND BUSINESS PLAN attached hereto as **Exhibit "D"**.

### 9.4.2 Confirmation Deposit.

Prior to the Confirmation Hearing, the Debtor shall deposit funds into Murray & Murray's trust account in an amount sufficient to pay (a) all sums due under the Plan on the Effective Date, and (b) all projected Administrative Claims.

### 9.4.3 Payments On The Effective Date.

If the Reorganized Debtor does not have sufficient funds on the Effective Date to make the

JWM/RRL
K:\Dennnger\Schwkn\GLCP\DS and Plan\DS-Stmt v.9.doc
14
DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION (DATED SEPTEMBER 22, 2011)

Case: 11-30029   Doc# 117   Filed: 09/22/11   Entered: 09/22/11 16:31:32   Page 20 of
53

payments provided in the Plan to the holders of Allowed Administrative Claims, Tax Claims and Priority Claims, any Member may, in its discretion, loan sufficient funds to the Reorganized Debtor to make such payments, and such loans shall be treated as Class 3 Claims.

### 9.5. Distributions.

#### 9.5.1 Distribution Account.

If the Disbursing Agent is a Person other than the Responsible Person, the Disbursing Agent will hold any funds transmitted to it in a segregated trust account for the benefit of holders of Allowed Claims.

#### 9.5.2 Distribution Addresses.

Unless a Creditor has provided the Debtor or the Reorganized Debtor and its counsel with written notice of a different address, Distributions will be mailed to Creditors at the address set forth in their proofs of Claim filed with the Bankruptcy Court. If no proof of Claim is filed with respect to a particular Claim, the Distribution will be mailed to the address set forth in the Schedules filed by the Debtor.

#### 9.5.3 Withholding Taxes.

Pursuant to Section 346(h) of the Bankruptcy Code, the Disbursing Agent will be entitled to deduct any federal, state or local withholding taxes from any cash payments made with respect to Allowed Claims, as appropriate. The Disbursing Agent will be permitted to withhold a Distribution to any Creditor who has not provided information requested by the Disbursing Agent for the purpose of fulfilling its obligations hereunder. The Disbursing Agent will comply with all reporting obligations imposed on it by any governmental unit with respect to withholding and related taxes.

### 9.6. Responsible Person.

On and after the Effective Date, Timothy Reynders shall serve as the Reorganized Debtor's Chief Executive Officer and director. To the extent provided by the Plan, he will also serve as the Responsible Person and Disbursing Agent. As Chief Executive Officer, Mr. Reynders will receive a salary of $10,000 per month. He will receive no compensation for his service as a director. Masumi Osaki will serve as the Reorganized Debtor's only other director. She will not be compensated for such service.

Case: 11-30029    Doc# 117    Filed: 09/22/11    Entered: 09/22/11 16:51:31    Page 21 of
53

The Responsible Person will be replaced in the event of a voluntary resignation, death, incapacity or at the request of a party in interest for "cause" upon order of the Bankruptcy Court. In the event of a voluntary resignation, the then-Responsible Person will select a replacement. In all other events, the Court will appoint a replacement. A voluntary resignation will not be effective until a successor has accepted in writing his or her appointment.

The Responsible Person will manage the Reorganized Debtor and will have all of the authority to act on behalf of the Reorganized Debtor in accordance with the Bankruptcy Code, the Bankruptcy Rules and Local Rules. Such management will include: (a) fulfilling the duties and obligations of the Debtor and the Reorganized Debtor under the Plan; and (b) fully administering the Bankruptcy Estate as required by the Plan, the Order of Confirmation, the Bankruptcy Code and the Bankruptcy Rules, which duties and obligations include the facilitation of Distributions pursuant to the Plan, reviewing Claims, objecting to Disputed Claims, supervising the preparation and filing of required tax returns of the Debtor and closing the Bankruptcy Case. The Reorganized Debtor will be substituted as successor to the Debtor and its Estate in all actions and proceedings pending or thereafter commenced in the Bankruptcy Court with respect to Disputed Claims. Without limiting the foregoing, the Responsible Person, acting on behalf of the Reorganized Debtor, will have all of the rights and powers of an estate representative appointed pursuant to Section 1123(b)(3) of the Bankruptcy Code to prosecute or otherwise assert the Retained Claims, if any, including Avoidance Actions, if any.

The Responsible Person may, in his discretion, employ such other persons as may be necessary to assist with implementing the Plan and as otherwise necessary in the Case.

Subject to the Reorganized Debtor's business judgment regarding the pursuit of any particular Retained Claim (which may entail evaluation, among other things, of the cost of pursuing such Retained Claim) and the concurrence of the Reorganized Debtor's board of directors, the Responsible Person will have no obligation to pursue any affirmative claims on behalf of the Reorganized Debtor or its Estate and any such claims may be abandoned or waived.

Upon the Effective Date, the Responsible Person will be authorized on behalf of the Debtor and Reorganized Debtor to execute all instruments, agreements and documents, and to take all

Case: 11-50029   Doc# 117   Filed: 09/22/11   Entered: 05/22/11 16:51:32   Page 22 of
53

actions for and on behalf of the Debtor or Reorganized Debtor necessary to effectuate the provisions of the Plan. Any such document, agreement or instrument executed and delivered by the Responsible Person will be conclusively deemed duly executed by the Debtor and/or Reorganized Debtor without the need for further corporate action or order of the Bankruptcy Court. After the Effective Date, the Responsible Person will be entitled to implement and administer the Plan without the need for further corporate action or order of the Bankruptcy Court.

### 9.7. **Disbursing Agent.**

Timothy Reynders will serve as Disbursing Agent unless otherwise ordered by the Court.

### 9.8. **De Minimis Distributions.**

Notwithstanding any other provision of the Plan, Distributions of less than $50.00 need not be made on account of any Allowed Claim; provided, however, that Distributions that would otherwise be made but for this provision will carry over to the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim is entitled is more than $50.00, at which time the cumulative amount of such Distributions will be paid to such holder.

### 9.9. **Unclaimed Distributions.**

Any cash Distributions that remain unclaimed or unnegotiated for ninety (90) days following issuance of the check representing the Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry) will become the property of the Reorganized Debtor.

### 9.10. **Tax Returns, Payments and Refunds.**

The Reorganized Debtor shall file or cause to be filed any and all delinquent and final tax returns and pay any and all taxes owed by the Debtor and the Reorganized Debtor on a timely basis (other than taxes provided for under the Plan). The Reorganized Debtor reserves all rights to amend prior tax returns of the Debtor and to pursue and collect all potential tax refunds, to claim losses and to take such other actions to the fullest extent allowed by law.

### 9.11. **Further Orders.**

Upon motion by the Reorganized Debtor, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

Case: 11-50029    Doc# 117    Filed: 09/22/11    Entered: 09/22/11 16:51:31    Page 23 of
53

**9.12. Post Confirmation Employment of Personnel.**

The Reorganized Debtor and any Disbursing Agent may employ or contract with Persons and other Entities to perform, or advise and assist them in the performance of, their respective obligations under the Plan. The Reorganized Debtor may continue to employ the Debtor's Professionals for the purposes for which they were employed before the Confirmation Date, and for such additional purposes as the Reorganized Debtor may request, and the Reorganized Debtor may employ such other Professionals as may be necessary to perform its responsibilities under the Plan.

**9.13. Post-Confirmation Compensation and Reimbursement of Professionals.**

All professionals employed by the Reorganized Debtor after the Confirmation Date will be entitled to payment of their reasonable post-Confirmation Date fees and reimbursement of expenses on a monthly basis, subject to the following:

Each professional requesting payment of such compensation shall serve a detailed statement of requested fees and expenses on the Notice Parties.

Any Notice Party or other party in interest may object to any portion of the requested fees and expenses. Any objection to the payment of fees or reimbursement of expenses must be in writing (and sufficiently detailed to allow the professional whose fees or expenses are subject to the objection an opportunity to respond, and ultimately to allow the Bankruptcy Court to rule on such objection) and served on the Notice Parties and the professional whose fees and expenses are subject to the objection. Such an objection must be served within fifteen (15) days after service of the detailed statement.

If there is no objection to a professional's requested fees and expenses within such fifteen (15) day period, the Reorganized Debtor shall promptly pay the requested amount in full. If an objection to a portion of the fees or expenses requested is timely served, the Reorganized Debtor shall promptly pay the undisputed portion of such fees and expenses.

To the extent that an objection is timely served, the Responsible Person shall reserve monies in the Disputed Claims Reserve Account in the amount of the disputed fees and expenses pending resolution of said objection.

Any objection to a request for payment of fees and expenses will be resolved by either: (a)

Case: 11-50029    Doc# 117    Filed: 09/22/11    Entered: 09/22/11 16:51:52    Page 24 of
53

written agreement between the professional requesting such fees and expenses and the objecting party; or (b) Final Order of the Bankruptcy Court. Resolution by the Bankruptcy Court must be requested by motion filed and served on the objecting party and the Notice Parties in accordance with the Bankruptcy Rules and the Local Rules on not less than twenty-one (21) days notice and such motion may be filed by either the requesting professional or the objecting party. Any opposition to the motion must be filed and served no later than seven (7) days prior to the hearing.

Professionals will not otherwise be required to file applications for Bankruptcy Court approval of post-Confirmation fees and expenses.

### 9.14. Post-Confirmation Notice.

To the extent that any action taken in the Bankruptcy Case after the Effective Date requires notice under the Bankruptcy Code or the Bankruptcy Rules, a notice must be provided in accordance therewith, provided that notice will not be required to any Person whose Claim has been paid in full. The Reorganized Debtor and the Responsible Person may proceed via the "**scream or die**" notice procedures (failure to make a timely objection permits entry of an order without a hearing) as permitted by the Local Rules.

### 9.15. Revesting of Property of the Estate.

On the Effective Date all property of the Debtor and the Bankruptcy Estate will vest in the Reorganized Debtor, free and clear of any and all liens, encumbrances, Claims and Interests of Creditors and Interest Holders subject to the provisions of the Plan. Revesting does not modify the nature of any contracts assumed by the Debtor and/or Reorganized Debtor.

### 9.16. Post-Confirmation Reports, Fees and Final Decree.

#### 9.16.1 United States Trustee Fees.

Not later than thirty (30) days after the end of each calendar quarter that ends after the Effective Date (including any fraction thereof), the Reorganized Debtor shall pay to the United States Trustee the quarterly fee for such quarter until the Case is converted, dismissed or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).

#### 9.16.2 Post-Confirmation Reports.

Not later than thirty (30) days after the end of each calendar quarter which ends after the

JWM/RRL
K:\Dumpass\Schwab\LC\PlDS and Plan\DS\Stmt (Sept 22)\DS Stmt v7.doc-9 19 DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION (DATED SEPTEMBER 22, 2011)

Case: 11-30029 Doc# 177 Filed: 09/22/11 Entered: 09/22/11 16:51:32 Page 25 of 53

Effective Date, the Reorganized Debtor shall file and serve upon the United States Trustee a quarterly post-Confirmation status report in substantially the form provided by the United States Trustee. Further reports must be filed no later than thirty (30) days after the end of every calendar quarter thereafter until the entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.

### 9.16.3 Final Decree.

At such time as all motions, contested matters and adversary proceedings have been finally resolved and the Bankruptcy Case is in a condition to be closed, the Reorganized Debtor shall file an application for the entry of a Final Decree to close the Bankruptcy Case pursuant to Section 350 of the Bankruptcy Code and Rule 3022 of the Bankruptcy Rules. Entry of a Final Decree may be sought by the Reorganized Debtor notwithstanding that all payments required by the Plan have not been completed provided the Bankruptcy Case is determined by the Bankruptcy Court to be fully administered; provided further, that the Bankruptcy Court retains jurisdiction to hear all matters involving the further administration of the Plan until all holders of Allowed Claims have been paid in full or as otherwise agreed to or provided for under the Plan. The Reorganized Debtor shall serve the application for entry of a Final Decree on the Notice Parties. Pursuant to Local Rule, such application shall be considered by the Bankruptcy Court without a hearing unless within fourteen (14) days after the date of service of the notice, a party in interest files and serves a request for hearing.

## ARTICLE X.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 10.1. Treatment of Executory Contracts and Unexpired Leases.

The Debtor reserves the right to move the Bankruptcy Court at any time for authority to assume, assume and assign, or reject, pursuant to Bankruptcy Code Section 365, any and all contracts that are executory and leases that are unexpired.

### 10.2. Assumption of Executory Contracts and Unexpired Leases.

Each contract and lease listed on **Exhibit "A"** to the Plan will be assumed by the Debtor on the Effective Date to the extent each such contract is executory and such lease is unexpired.

**10.3.   Effect of Assumption of Executory Contracts and Unexpired Leases.**

All executory contracts and unexpired leases assumed prior to Confirmation or pursuant to the Plan and not otherwise rejected pursuant to the Plan or otherwise will remain in full force and effect, be unimpaired by the Plan except as specifically modified by the Plan and the Order of Confirmation, and be binding on the parties thereto.

**10.4.   Adding and Removing Executory Contracts and Unexpired Leases.**

The provisions of this Article X may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the Confirmation Hearing, to add or remove executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan.

**10.5.   Defaults.**

Unless other treatment is agreed to between the parties to each assumed contract or lease, if there has been a default in an assumed executory contract or unexpired lease other than the kind specified in Section 365(b)(2) of the Bankruptcy Code, the Debtor shall, on or before the Effective Date: (a) cure, or provide adequate assurance that it will promptly cure, any such default; (b) compensate, or provide adequate assurance that it will promptly compensate, the other party to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (c) provide adequate assurance of future performance under such contract or lease.

**10.6.   Rejection of Executory Contracts and Unexpired Leases.**

Without admitting the validity of any other executory contracts and unexpired leases, all executory contracts and unexpired leases of the Debtor listed on **Exhibit "B"** to the Plan will be rejected by the Debtor as of the Effective Date. Confirmation of the Plan will be deemed to constitute Bankruptcy Court approval of such rejection.

**10.7.   Rejection Claims.**

The holder of a Rejection Claim must file with the Bankruptcy Court, and serve on counsel for the Reorganized Debtor, a proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any payment or other Distribution on account of such Claim.

# ARTICLE XI.

## PROOFS OF CLAIM; OBJECTIONS

### 11.1.   Time for Filing Proofs of Claim.

Proofs of Claim, when required, must be filed with the Bankruptcy Court no later than the applicable Claims Bar Date (which for most prepetition Claims was May 10, 2011 and for governmental units was July 5, 2011).   However, Bankruptcy Rule 3003(b) provides that it is not necessary for a Creditor to file a proof of Claim if its Claim has been listed on the Debtor's Schedules filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Rule 1007(a)(3) of the Bankruptcy Rules, and is not listed as disputed, contingent, unliquidated or unknown as to amount.   Pursuant to Bankruptcy Rule 3003(c)(2), any creditor whose Claim is not scheduled by the Debtor or was scheduled as disputed, contingent, unliquidated, or unknown as to amount, and who fails to file a proof of Claim on or before the applicable Claims Bar Date or other applicable deadline may not be treated as a Creditor with respect to that Claim for purposes of voting on the Plan or receiving a Distribution thereunder.

### 11.2.   Ownership and Transfers of Claims.

Distributions to Creditors under the Plan will be made to the Persons shown on the Debtor's or the Bankruptcy Court's records on the Effective Date.   For purposes of any Distribution under the Plan, the Reorganized Debtor, the Disbursing Agent, the Responsible Person, and their professionals will have no obligation to recognize any transfer of Claims after the Effective Date.

ANY PARTY WHO ACQUIRES A CLAIM AGAINST THE DEBTOR OR REORGANIZED DEBTOR AFTER THE EFFECTIVE DATE MUST ARRANGE WITH THE HOLDER OF SUCH CLAIM TO RECEIVE DISTRIBUTIONS TO WHICH THE TRANSFEREE MAY BE ENTITLED.   NEITHER THE REORGANIZED DEBTOR NOR THE DISBURSING AGENT WILL BE REQUIRED TO TRACK CHANGES IN OWNERSHIP OF CLAIMS AFTER THE EFFECTIVE DATE.

### 11.3.   Amendments to Claims.

Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, proofs of Claim: (a) may not be filed upon expiration of the applicable bar date; and (b) may not be amended after the expiration of the applicable bar date except for amendments to proofs of Claim to decrease the amount or priority thereof.

Case: 11-30029   Doc# 117   Filed: 09/22/11   Entered: 05/22/17 16:51:31   Page 28 of
53

**11.4.** **Claim Objections.**

An objection to a Claim must be filed no later than the Claims' Objection Date which is ninety (90) days after the Effective Date; provided, however, that such date may be extended by the Bankruptcy Court for cause upon the ex parte motion of the Reorganized Debtor. The Reorganized Debtor will have the primary responsibility to review Claims filed against the Debtor, to file objections as appropriate and to resolve Disputed Claims.

**11.5.** **Disallowance of Claims.**

All claims of any Entity from whom property is sought by the Debtor, the Reorganized Debtor or the Responsible Person, under Sections 542, 543, 550 or 553, of the Bankruptcy Code, or with respect to whom the Debtor, the Reorganized Debtor or Responsible Person alleges is a transferee of a transfer that is avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, will be disallowed if: (a) such Entity on one hand, and the Debtor, the Reorganized Debtor or the Responsible Person, on the other hand, agree, or the Bankruptcy Court has determined by a Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code, and (b) such Entity or transferee has failed to turnover such property by the dates set forth in such agreement or Final Order.

The Plan contains the following important language with respect to the disallowance of claims:

EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE WILL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS WILL NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT ON OR BEFORE THE LATER OF (A) THE CONFIRMATION HEARING, OR (B) 45 DAYS AFTER THE APPLICABLE BAR DATE.

/ / /

Case: 11-50029   Doc# 117   Filed: 09/22/11   Entered: 09/22/11 16:31:31   Page 29 of
53

**11.6.  Reserve Accounts.**

Subject to the next sentence, any cash that would be distributed to the holder of a Disputed Claim if it were an Allowed Claim on any Distribution Date hereunder will be deposited by the Disbursing Agent into the Disputed Claims Reserve Account. Not later than fifteen (15) days after the Disbursing Agent receives notice that a Disputed Claim has been Allowed in whole or in part, the Disbursing Agent shall Distribute the cash deposited into the Disputed Claims Reserve Account on account of such Disputed Claim. To the extent that cash payments made into the Disputed Claims Reserve Account on account of a Disputed Claim ultimately exceed the cash distributable with respect to the Allowed Amount of such Claim, such excess cash will become the property of the Reorganized Debtor.

**11.7.  Distributions.**

Notwithstanding any provision of the Plan specifying a date or time for payments or Distributions of consideration hereunder, payments and Distributions in respect of any Claim that at such date or time is disputed, unliquidated, contingent, or unknown as to amount will not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, whereupon appropriate Distributions will be made promptly in accordance with the preceding section.

**ARTICLE XII.**

**DEFAULT**

If the Reorganized Debtor defaults in the performance of any of its obligations under the Plan, and has not cured such default within a period of twenty-one (21) days after receipt of written notice of default from any party in interest affected by the alleged default, then such party in interest may file a motion with the Bankruptcy Court seeking an order directing the Reorganized Debtor to perform such obligations. If the Reorganized Debtor defaults in the performance of any material obligation under the Plan, any party in interest, including the Office of the United States Trustee, may file a motion with the Bankruptcy Court seeking an order converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code. If such motion is granted, the Plan will terminate, and all then remaining property of the Reorganized Debtor will vest in the Chapter 7 estate. Such

Case: 30029   Doc#: 147   Filed: 09/22/11   Entered: 09/22/11 09:51:02   Page 30 of

property will be administered by the Chapter 7 trustee as prescribed in Chapter 7 of the Bankruptcy Code. Any party in interest, including the Reorganized Debtor, may oppose any such motion.

## ARTICLE XIII.

### PRESERVATION OF RETAINED CLAIMS AND AVOIDANCE ACTIONS

**13.1.** **All Retained Claims and Avoidance Actions and Rights are Preserved.**

The Debtor continues to review transactions and records which process may result in additional claims against persons not yet identified herein, and may also result in other claims against persons identified herein in addition to those identified at this point in time. Nothing in the Plan will be deemed to constitute a waiver of the powers of the Debtor as a debtor in possession under the Bankruptcy Code or the Bankruptcy Rules, and the Debtor and the Reorganized Debtor, as applicable, will retain after Confirmation and after the Effective Date, all powers granted by the Bankruptcy Code and the Bankruptcy Rules to a trustee and debtor in possession, including without limitation, those relating to the recovery of property, avoidance of liens, and objection to, and/or subordination of, Claims, including the potential claim against Saeed Amini. Confirmation of the Plan effects no settlement, compromise, waiver or release of any Retained Claim unless the Plan or Order of Confirmation specifically and unambiguously so provides. The failure of the Plan to refer to any particular Retained Claim is not and will not be construed as a settlement, compromise, waiver, or release of any such Retained Claim. All Retained Claims are hereby preserved and will continue to remain valid after the Effective Date. Except as provided in the Plan or the Order of Confirmation, the Debtor and the Reorganized Debtor reserve any and all Claims, Retained Claims, causes of action and rights against any and all third parties, whether such Claims, Retained Claims, causes of action or rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date and/or the date Distributions are made. The entry of the Confirmation Order will not constitute *res judicata* or otherwise bar, estop or inhibit any actions by the Debtor or the Reorganized Debtor, as applicable, regarding any claims they hold as identified herein or otherwise.

Without limiting the generality of the foregoing, the Retained Claims include, but are not limited to, Avoidance Actions, the claim against Saeed Amini for the return of an avoidable transfer, and all claims identified in the Debtor's Schedules and Statement Of Financial Affairs (as amended

Case: 11-50029   Doc# 117   Filed: 09/22/11   Entered: 09/22/11 16:51:32   Page 31 of 53

or supplemented), if any. Any recovery arising out of or related to an Avoidance Action will be property of the Debtor or Reorganized Debtor as applicable, and will be used to pay Distributions pursuant the Plan.

### ARTICLE XIV.

### RETENTION OF JURISDICTION

The Bankruptcy Court will have and retain on and after the Confirmation Date and on and after the Effective Date exclusive jurisdiction of the Bankruptcy Case: (a) to enforce the provisions, purposes, and intent of the Plan; (b) to determine the allowance or disallowance of Claims; (c) to hear and determine proceedings initiated before or after the Confirmation Date and the Effective Date regarding the prosecution of the Retained Claims or any other rights, claims, causes of action or claims for relief held by the Reorganized Debtor against any party, including the recovery of property and subordination of Claims; (d) to fix and approve allowance of compensation and other Administrative Claims, including, if appropriate, payments to be made in connection with the Plan; (e) to adjudicate controversies arising from the terms of the Plan; (f) to hear and determine any proposed modifications of or amendments to the Plan to the extent permitted by Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019; (g) to enforce or interpret the provisions of the Plan, the Order of Confirmation or any order entered by the Bankruptcy Court in the Bankruptcy Case; (h) to facilitate the consummation of the Plan; (i) to consider such other matters as may be set forth in the Plan or the Order of Confirmation; (j) to hear and determine any Claim of any Person of any nature whatsoever against the Debtor's Professionals arising in, under or related to the Case; (k) to hear any other matters pertaining to the Plan; and (l) to enter a Final Decree closing the Bankruptcy Case. If closed, the Bankruptcy Case may be reopened at any time to facilitate the provisions of Article XIV of the Plan.

### ARTICLE XV.

### EFFECT OF CONFIRMATION

As of the Confirmation Date, the effect of the Order of Confirmation will be as provided in Section 1141 of the Bankruptcy Code, and as follows:

///

Case: 11-50029   Doc# 117   Filed: 09/22/11   Entered: 09/22/11 16:31:32   Page 32 of
53

### 15.1. **Binding Effect of Plan.**

The provisions of the confirmed Plan will bind the Debtor, the Reorganized Debtor, any entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor and Interest Holder, whether or not such Creditor or Interest Holder has filed a proof of Claim or Interest in the Bankruptcy Case, whether or not the Claim or Interest of such Creditor or Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan.

### 15.2. **Full Satisfaction of Claims and Interests.**

Except as otherwise provided in the Plan and the Order of Confirmation, the rights afforded in the Plan will constitute full and complete satisfaction and release of all Claims and Interests, including any interest accrued thereon from and after the Petition Date, against the Debtor, the Reorganized Debtor, the Bankruptcy Estate, or any assets or property of the Debtor, the Reorganized Debtor and the Bankruptcy Estate.

### 15.3. **Judgments Null and Void.**

Any judgment obtained before or after the Confirmation Date in any court other than the Bankruptcy Court will be null and void as a determination of the liability of the Debtor or the Reorganized Debtor.

### 15.4. **Injunction.**

Under the Plan, as of the Confirmation Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is satisfied or any other right that is terminated under the Bankruptcy Code or the Plan are permanently enjoined from commencing or continuing any action, the employment of process, or other action, to collect, recover or offset any such Claim or debt as a personal liability of the Debtor or Reorganized Debtor to the fullest extent permitted by Bankruptcy Code section 524.

### 15.5. **Reservation of Powers.**

Nothing in the Plan will be deemed to have constituted a waiver of any powers held by the Debtor as a debtor in possession under the Bankruptcy Code, the Bankruptcy Rules or the Local Rules. The Reorganized Debtor will retain all powers granted by the Bankruptcy Code, the

Case: 11-50029     Doc# 117     Filed: 09/22/11     Entered: 09/22/11 16:31:32     Page 33 of 53

Bankruptcy Rules and the Local Rules to a trustee or debtor in possession, including those with respect to recovery of property and objections to, and/or subordination of, Claims and Interests.

### 15.6. Preservation of Insurance.

Nothing in the Plan will diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtor or any other Person.

## ARTICLE XVI.

## CONDITIONS PRECEDENT

### 16.1. Conditions Precedent.

The Plan provides that the following is a condition to the Effective Date:

> The Confirmation Order is entered and becomes a final order in form and substance satisfactory to the Debtor. The Confirmation Order will provide, among other things, that the Debtor or Reorganized Debtor, as appropriate, is authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with or described in the Plan.

### 16.2. Waiver of Conditions.

The Plan provides that the conditions set forth above may be waived by the Debtor without notice, leave or order of the Bankruptcy Court, or any formal action other than proceeding to confirm or consummate the Plan.

## ARTICLE XVII.

## OTHER PLAN PROVISIONS

### 17.1. Exemption from Stamp, Transfer and Other Taxes.

To the extent any sale contemplated by the Plan would be subject to a stamp or similar tax, the Debtor will be entitled to exclusion of such sale from any stamp or similar tax to the fullest extent allowed by law.

### 17.2. No Admissions.

Except as specifically provided in the Plan, nothing contained in the Plan may be deemed or construed in any way as an admission by the Debtor or its Bankruptcy Estate with respect to any fact or any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of

Case: 11-50029   Doc# 117   Filed: 09/22/11   Entered: 05/22/11 16:51:51   Page 34 of
53

any property of the Bankruptcy Estate.

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan will: (a) be deemed to be an admission by the Debtor with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claim, Interest, or any claims held by the Debtor; or (c) prejudice in any manner the rights of the Debtor or the Bankruptcy Estate in any further proceedings.

### 17.3. Revocation of the Plan.

The Debtor reserves the right to withdraw the Plan before the Confirmation Date.

### 17.4. Successors and Assigns.

The rights, benefits, and obligations of any Entity referred to in the Plan will be binding on, and will inure to the benefit of any heir, executor, administrator, successor, or assign of that Entity.

### 17.5. Nonconsensual Confirmation.

In the event that classes entitled to vote fail to accept the Plan in accordance with Bankruptcy Code Section 1129(a)(8), the Debtor reserves the right to modify the Plan in accordance with Bankruptcy Code Section 1127(a). In accordance with Section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or schedule including amending or modifying it to satisfy the requirements of the Bankruptcy Code.

### 17.6. Destruction of Records.

The Reorganized Debtor may, but is not required to, seek one or more orders of the Bankruptcy Court authorizing the abandonment and destruction of its books and records at such time as the recordkeeping time periods required by applicable law, custom or practice have expired.

### 17.7. Saturday, Sunday and Legal Holiday.

If any payment or act under the Plan should be made or performed on a day that is not a Business Day, then the payment or act may be completed the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

### 17.8. Plan Interpretation.

The headings contained in the Plan are for convenience of reference only and do not limit or

otherwise affect in any way the meaning or interpretation of the Plan. All references in the Plan to
the singular will be construed to include references to the plural and vice versa. All references in
the Plan to any one of the masculine, feminine or neuter genders will be deemed to include
references to both other such genders. References to the Debtor will also include the Reorganized
Debtor (or vice versa) as the context requires. All references in the Plan to a Section or an Article
mean the appropriately numbered Section or Article of the Plan. Whenever the Plan uses the term
"including," such reference is deemed to mean "including, but not limited to."

### 17.9. Setoff/Recoupment.

Nothing contained in the Plan constitutes a waiver or release by the Debtor or Reorganized
Debtor of any right of setoff or recoupment the Debtor may have against any Creditor.

### 17.10. Notices.

All notices required or permitted to be made in accordance with the Plan must be in writing
and delivered personally or by first class mail, as follows:

If to the Reorganized Debtor:

Pampas Palo Alto, LLC
Attn: Timothy Reynders
529 Alma Street
Palo Alto, California 94301

With a copy to:

John Walshe Murray
Murray & Murray
A Professional Corporation
19400 Stevens Creek Boulevard, Suite 200
Cupertino, CA 95014

If notice is to be provided to a holder of an Allowed Claim or Allowed Interest, at the address
prescribed by Section 6.3.2 in the Plan. Notices will be deemed given when delivered or three days
after deposit in the United States mail. Any entity may change the address at which such entity is to
receive notices under the Plan by filing a written notice with the Bankruptcy Court and serving such
notice on the Reorganized Debtor and its counsel.

### 17.11. Reservation of Rights.

Neither the filing of the Plan nor any statement or provision contained in the Plan or in the

Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, will: (a) be or be deemed to be an admission against interest; and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have: (i) against any other party in interest; or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Bankruptcy Case involving the Debtor.

**17.12. Exhibits.**

All exhibits attached to the Plan are incorporated into the Plan by reference. All exhibits attached to the Disclosure Statement hereby are incorporated into the Disclosure Statement by reference.

## ARTICLE XVIII.

## RISK FACTORS

Holders of impaired Claims entitled to vote on the Plan should read and consider carefully the factors set forth below, as well as other information set forth in this Disclosure Statement and the documents delivered together herewith and/or incorporated by reference herein prior to voting to accept or reject the Plan.

**18.1. Additional Claims Risks.**

The Administrative Claims Bar Date will occur after Confirmation and the Allowed amount of such Claims will increase the overall liabilities of the Reorganized Debtor and therefore the cash available for holders of Claims. Additionally, if the Reorganized Debtor is unsuccessful in its objections to Disputed and contingent Claims that have been filed against the Debtor, the total liabilities will be greater than expected, and there may be less cash available for Distribution to holders of Claims.

**18.2. Estimation of Claims and Distribution Risks.**

While the Debtor has endeavored to project what it believes are likely to be the Distributions, if any, to be made to parties holding Allowed Claims, there can be no certainty that the Debtor's

JWM/RRL
K:\Bankruptcy\Alon\LC\PL\DS and Plan\DS Sept 22\DS Sept. v.doc2
31
DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION (DATED SEPTEMBER 22, 2011)

Case: 11-50029    Doc# 117    Filed: 09/22/11    Entered: 05/22/11 10:51:31    Page 37 of
53

1   projections will be accurate, and that Creditors will receive the Distributions described in the Plan.

2   The Debtor's projections will necessarily be affected by, among other things: (1) recoveries by the

3   Debtor on the Retained Claims; (2) the successful operation of the Restaurant; (3) the outcome of

4   objections to Claims; and (4) the cost and expenses of such actions.

5       **18.3.   Bankruptcy Risks.**

6           Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in

7   a particular class only if such claim or interest is substantially similar to the other claims or interest

8   of such class.   The Debtor believes that the classification of Claims and Interests under the Plan

9   complies with the requirements set forth in the Bankruptcy Code.   However, there can be no

10  assurance that the Bankruptcy Court would reach the same conclusion.

11          If the Debtor receives votes in number and amount sufficient to enable the Bankruptcy Court

12  to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, to confirm the

13  Plan.   In the event the Debtor does not receive sufficient votes, the Debtor may seek to accomplish

14  an alternative Chapter 11 plan.   There can be no assurance however that the terms of any such

15  alternative Chapter 11 plan would be similar or as favorable to the holders of Allowed Claims as

16  those proposed in the current proposed Plan.

17          Even if all classes of Claims and Interests that are entitled to vote to accept the Plan, the Plan

18  might not be confirmed by the Bankruptcy Court.   Section 1129 of the Bankruptcy Code sets forth

19  the requirements for Confirmation.   The Debtor believes that the Plan satisfies all of the

20  requirements for Confirmation of a plan under Section 1129 however there can be no assurance that

21  the Bankruptcy Court would reach the same conclusion.

22          The Debtor anticipates litigation with Pampas International regarding the License

23  Agreement, use of the "Pampas" mark and related "Pampas" intellectual property, and the rejection

24  of the License Agreement.   The Debtor may face adverse consequences as a result of this litigation

25  including the requirement that it change its name, restructuring the format and style of the

26  Restaurant, and its inability to use various others "Pampas" related intellectual property.

27  Additionally, dependent on the outcome of this litigation as the result of rejecting the License

28  Agreement, the Debtor may be found liable for a large pre-petition and post-petition claim owed to

Pampas International. Based on the advice of its special intellectual property counsel, the Debtor believes it will prevail in this litigation.

## ARTICLE XIX.

### CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

**19.1.** **Introduction.**

THE FOLLOWING IS A SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF CONSUMATION OF THE PLAN THAT MAY BE MATERIAL TO CREDITORS AND INTEREST HOLDERS (EACH A "**HOLDER**" AS REFERRED TO IN THIS ARTICLE) AND THE DEBTOR. THIS DISCUSSION IS INCLUDED FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT INTENDED TO BE, AND IS NOT, LEGAL OR TAX ADVICE TO ANY PARTICULAR HOLDER. THIS SUMMARY IS BASED ON THE CURRENT PROVISIONS OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "**IRC**"), THE INCOME TAX REGULATIONS (THE "**REGULATIONS**") AND OTHER LEGAL AUTHORITIES, ALL OF WHICH ARE SUBJECT TO CHANGE OR DIFFERING INTERPRETATIONS, POSSIBLY WITH RETROACTIVE EFFECT. NO RULINGS FROM THE INTERNAL REVENUE SERVICE (THE "**IRS**") OR OPINIONS OF COUNSEL HAVE BEEN OR WILL BE REQUESTED CONCERNING THE MATTERS DISCUSSED BELOW. THE TAX CONSEQUENCES SET FORTH IN THE FOLLOWING DISCUSSION ARE NOT BINDING ON THE IRS OR THE COURTS, AND NO ASSURANCE CAN BE GIVEN THAT CONTRARY POSITIONS WILL NOT BE SUCCESSFULLY ASSERTED BY THE IRS OR ADOPTED BY A COURT.

THIS DISCUSSION DOES NOT APPLY TO HOLDERS THAT ARE NOT "U.S. PERSONS" (AS SUCH PHRASE IS DEFINED IN THE IRC) AND DOES NOT PURPORT TO ADDRESS ALL ASPECTS OF UNITED STATES FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO THE DEBTOR OR TO SUCH HOLDERS IN LIGHT OF THEIR INDIVIDUAL CIRCUMSTANCES.

THE FOLLOWING DISCUSSION DOES NOT APPLY TO CERTAIN HOLDERS WHO, DUE TO THEIR PARTICULAR CIRCUMSTANCES, MAY BE SUBJECT TO SPECIAL RULES.

THOSE HOLDERS INCLUDE HOLDERS WHO ARE DEALERS IN SECURITIES, FINANCIAL INSTITUTIONS, INSURANCE COMPANIES, TAX-EXEMPT ORGANIZATIONS, GOVERNMENTAL AGENCIES, BANKS, PASS-THROUGH ENTITIES, TRADERS IN SECURITIES, SMALL BUSINESS INVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES AND FOREIGN PERSONS.

ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF AN ALLOWED CLAIM.

### 19.2. IRS CIRCULAR 230.

TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, HOLDERS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON BY HOLDERS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN BY DEBTOR IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) BY DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

EACH HOLDER SHOULD CONSULT THE HOLDER'S OWN TAX ADVISOR TO DETERMINE THE HOLDER'S PARTICULAR UNITED STATES FEDERAL INCOME TAX CONSEQUENCES AND OTHER TAX CONSEQUENCES TO THE HOLDER OF THE PLAN, INCLUDING ANY STATE, LOCAL AND FOREIGN TAX LAWS AND THE EFFECT OF ANY CHANGES IN SUCH LAWS.

### 19.3. Consequences to the Debtor.

As a limited liability company with one or two different members that has not elected to be

Case: 11-30029   Doc#: 117   Filed: 09/22/11   Entered: 09/22/11 16:51:31   Page 40 of 53

taxed as a corporation, the Debtor is regarded to be a separate entity from each of its members for United States federal income tax purposes. Accordingly, any ordinary income/loss and capital gain/loss realized by the Debtor will be considered, for United States federal income tax purposes to be realized by the Holders of the membership units in the Debtor.

### 19.4. <u>Consequences to Interest Holders.</u>

A Holder of all of the units of a limited liability company such as the Debtor that has not filed an election to be taxed as a corporation for federal income tax purposes is considered to realize the ordinary income/loss and capital gain/loss realized by the limited liability company in accordance with the Holder's method of accounting for federal income tax purposes. Such ordinary income/loss and capital gain/loss will be realized and reportable by the Holder regardless of whether any distribution is received by the Holder. Thus, the Holder (or its owners) may be required to recognize income for United States federal income tax purposes as a result of a sale of assets of the Debtor even if no cash or other property is distributed by the Debtor to the Unit Holder. The ordinary income/loss and capital gain/loss may be taxable to the Holder, or taxable directly to the owners of the Holder, depending upon whether the Holder is a taxable entity (such as a corporation), a pass through entity (such as a partnership or entity taxable as a partnership) or an entity disregarded from its owner for United States federal income tax purposes.

Section 165(g) of the IRC permits a "worthless security deduction" for any security that is a capital asset that becomes worthless within the taxable year. The rules governing the timing and amount of worthless security deductions place considerable emphasis on the facts and circumstances of the Holder, the issuer, and the instrument with respect to which the deduction is claimed. <u>Holders are therefore urged to consult their own tax advisors with respect to their ability to take such deductions.</u>

### 19.5. <u>Consequences to Creditors Generally.</u>

Generally, any amount received by a Creditor in satisfaction of an Allowed Claim, to the extent such amount constitutes "gross income" within the meaning of Section 61 of the Code, will be taxable to the Creditor in accordance with the Creditor's method of accounting, if not previously included in the Creditor's gross income. This would include, for example, payments of interest, rent

or compensation for services. If a Creditor previously reported as taxable income, their respective Allowed Claim then the unpaid portion of the previously reported taxable income would be deductible as a business bad debt. A Creditor may be subject to regular income tax withholding or backup withholding, as described below, with respect to such payments. Creditors should consult with their own tax advisors as to the character and timing of recognition of any gain, loss or deduction they are planning to include in their tax return.

Any amount received by a Creditor in satisfaction of accrued interest on a Claim will be taxable to the Creditor as interest income, if not previously included in the Creditor's gross income. A Creditor may be subject to backup withholding, as described below, with respect to such interest payments.

Each Creditor who receives cash in partial or complete satisfaction of the Creditor's Claim will recognize gain or loss equal to the difference between the amount of cash received and the Creditor's tax basis in the Creditor's Claim. Gain may be recognized, for example, by a Creditor who acquired a Claim at a discount or who previously reported a bad debt deduction or worthless security loss with respect to all or a portion of the Claim. GENERALLY, ANY GAIN RECOGNIZED WILL BE CONSIDERED CAPITAL GAIN if the Claim is held as a capital asset, and GENERALLY will be ordinary income if the Claim is not held as a capital asset. Capital gain will generally be long-term capital gain if the Claim has been held for more than 12 months. Creditors should consult with their own tax advisors as to the character and timing of recognition of ANY gain, loss or deduction THEY ARE PLANNING TO INCLUDE IN THEIR TAX RETURN.

Any loss will GENERALLY be a capital loss if the Claim is a capital asset and if the payment is deemed a "retirement" of the Claim within the meaning of Section 1271 of the IRC. A Creditor who receives no payment with respect to a Claim (and a Creditor who receives a payment which is not a "retirement" and incurs a loss) should generally be able to claim a bad debt deduction to the extent of the Creditor's tax basis in the Claim (or, in the case of a Creditor receiving a payment, the excess of the tax basis in the Claim over the payment received). A Creditor who holds a Claim as a non-business bad debt and who is not a corporate Creditor will generally only be able to claim a short-term capital loss with respect to such Claim. A Creditor who holds a Claim which is a

JWM/RRL
K:\Marina\PROPOSOL CPE\Disc Stmt-Plans DS-Sept 22.DS.Final.wpd   36   DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED SEPTEMBER 22 (2011)

Case 11-50020   Doc# 147   Filed 09/22/11   Entered 09/22/11 09:51:21   Page 42 of

53

"security" as defined in Section 165(g) of the IRC will generally only be able to claim a capital loss rather than a bad debt deduction. Limitations apply to the ability to deduct capital losses. Creditors should consult with their own tax advisors as to the character and timing of recognition of ANY gain, loss or deduction THEY ARE PLANNING TO INCLUDE IN THEIR TAX RETURN.

Because a loss is allowed only for the tax year in which it is sustained, a Creditor that claims a loss or deduction in the wrong tax year risks losing the benefit of such loss or deduction in its entirety. Creditors should consult with their own tax advisors as to the character and timing of recognition of ANY gain, loss or deduction THEY ARE PLANNING TO INCLUDE IN THEIR TAX RETURN.

### 19.6.  Backup Withholding.

United States federal income tax laws require that, to avoid backup withholding with respect to "reportable payments" (in an amount equal to 28%), a Creditor or Holder must: (a) provide the Debtor with its correct taxpayer identification number ("**TIN**") on IRS Form W-9 and certify as to their eligibility for exemption from backup withholding; or (b) establish a basis for exemption from backup withholding on an appropriate IRS Form W-8 (including a Form W-8BEN, W-8ECI, W-8EXP and W-8IMY) or IRS Form W-9, as applicable. Exempt Creditors and Holders (including, among others, all corporations and certain foreign individuals) are not subject to backup withholding and reporting requirements. If withholding is made and results in an overpayment of taxes, a refund may be obtained.

THE FEDERAL TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS AND INTERESTS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.

**VOTING PROCEDURES**

With the Plan and Disclosure Statement, Creditors entitled to vote on the Plan will receive a Ballot and instructions for voting on the Plan. You should read the Ballot carefully and follow the instructions contained therein. Please use only the Ballot sent to you with this Disclosure Statement and the Plan.

To simplify the voting procedure, Ballots have been sent only to all known holders of Claims and Interests, including Disputed Claims to which objections may be filed. Ballots have not been sent to Class 1 and Class 4, for the reasons set forth hereinafter. Only holders of Claims or Interests allowed under Section 502 of the Bankruptcy Code, or temporarily allowed for voting purposes under Bankruptcy Rule 3018, whose Claims or Interest are in those classes of Claims or Interests that are "impaired" (as defined in Section 1124 of the Bankruptcy Code) under the Plan are entitled to vote to accept or reject the Plan.

**20.1.  Definition of Impairment.**

Under Section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a Plan of Liquidation unless, with respect to each claim or equity interest of such class, the plan:

(1)    leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2)    notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default-

(A)    cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured;

(B)    reinstates the maturity of such claim or interest as such maturity existed before such default;

(C)    compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or applicable law;

(D)    if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to

Case 4:11-bk-15020-EWH  Doc 147  Filed 09/22/11  Entered 09/22/11 20:51:02  Desc Main Document  Page 44 of
53

operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and

(E)   does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

A Claim to which an objection has been filed is not an Allowed Claim unless and until the Bankruptcy Court rules on the objection. The Bankruptcy Court may temporarily allow a Disputed Claim to which an objection has been filed for purposes of voting on the Plan. Therefore, although holders of Disputed Claims to which an objection has been filed will receive Ballots, these votes will not be counted unless the Bankruptcy Court temporarily allows such Claims for purposes of voting on the Plan.

Classes of Claims that are not impaired are conclusively presumed to have voted to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote on the Plan. Class 1 Creditors and Class 4 Interest Holders are not impaired under the Plan and are therefore conclusively presumed to have accepted the Plan. Accordingly, acceptances with respect to Class 1 and Class 4 are not being solicited and no Ballots need be returned by Class 1 Creditors or Class 4 Interest Holders.

Acceptances of the Plan are therefore being solicited only from Class 2 and 3. Consequently, only holders of Class 2 and 3 Claims need return their Ballots.

The Bankruptcy Court will hold a hearing on the Confirmation of the Plan commencing on the date and at the time and place set forth in the Order Approving Disclosure Statement. The hearing may be adjourned from time to time without notice except as given in open court.

If a party in interest is a member of more than one class, it will receive a Ballot for each class. IF YOU ARE A MEMBER OF MORE THAN ONE CLASS, YOU MUST FILL OUT AND RETURN ALL BALLOTS SENT TO YOU FOR YOUR VOTE TO COUNT IN EACH CLASS. CREDITORS WISHING TO VOTE ON THE PLAN SHOULD COMPLETE THE BALLOT PROVIDED AND RETURN IT NO LATER THAN _____ TO:

/ / /

Case: 11-50029   Doc# 117   Filed: 09/22/11   Entered: 09/22/11 16:51:32   Page 45 of
53

Murray & Murray
A Professional Corporation
Attn: Rachel Ragni Larrenaga
19400 Stevens Creek Boulevard, Suite 200
Cupertino, California 95014-2548
Facsimile: (650) 852-9244
Email: rragni@murraylaw.com

IF YOUR BALLOT IS NOT RETURNED BY _____, (the "**VOTING DEADLINE**") IT MAY NOT BE CONSIDERED. BALLOTS WHICH ARE RETURNED BUT NOT PROPERLY EXECUTED WILL NOT BE CONSIDERED. BALLOTS WHICH ARE EXECUTED BUT WHICH FAIL TO INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN WILL BE CONSIDERED AS ACCEPTING THE PLAN.

As the holder of a Claim against the Debtor, your acceptance of the Plan is important. The Bankruptcy Code defines acceptance of a plan by a class of Creditors as acceptance by the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the claims of that class which actually cast ballots for acceptance or rejection of the Plan, i.e., acceptance takes place only if two-thirds (2/3) in amount and a majority in number of the Creditors voting cast their ballots in favor of acceptance.

If any class of Claims does not accept the Plan, the Debtor may elect to seek Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code. Confirmation under Section 1129(b) can, in appropriate circumstances, take place notwithstanding the rejection of, or objection to, the plan by the holders of claims and interests. If required, the Plan may be modified at or prior to the Confirmation Hearing to permit Bankruptcy Court approval under Section 1129(b). If the Plan is not confirmed, the Bankruptcy Court may order the Bankruptcy Case dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code, or the Debtor or other parties in interest may propose a different plan.

After carefully reviewing the Plan and Disclosure Statement, indicate your vote on the enclosed Ballot and return it in the envelope provided to the address stated above. Accordingly, you are urged to return your signed and completed Ballot promptly. Ballots not received by the Voting

JWM/RRL
K:\Ford-Ragni\DS and Plan\DS Sept 22\DS Script v.6.2
40
DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION DATED SEPTEMBER 22, 2011)

Case: 11-30025   Doc# 117   Filed: 09/22/11   Entered: 09/22/11 09:02:32   Page 46 of
53

Deadline and unsigned Ballots will not be counted. Any executed Ballots that are timely received, but which do not indicate either an acceptance or rejection of the Plan, will be deemed to constitute an acceptance of the plan.

If you are a Holder of a Claim in Class 2 and Class 3 and: (a) did not receive a Ballot; (b) received a damaged or illegible Ballot; or (c) lost your Ballot, or if you are a party in interest and have any questions concerning the Disclosure Statement, any of the Exhibits hereto, the Plan, or the voting procedures in respect thereof, please contact Murray & Murray, A Professional Corporation, Attn: Rachel Ragni Larrenaga, 19400 Stevens Creek Blvd, Suite 200 Cupertino, California 95014; Telephone (650) 852-9000; Facsimile (650) 852-9244; email rragni@murraylaw.com.

THE DEBTOR, AS PROPONENT OF THE PLAN, RECOMMENDS THAT THE HOLDERS OF CLAIMS IN CLASSES 2 AND 3 VOTE TO ACCEPT THE PLAN.

A summary of the treatment of the various classes of Claims and Interests is set forth above.

## ARTICLE XXI.

## CONFIRMATION PROCEDURES; OBJECTIONS TO CONFIRMATION

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

### 21.1. Confirmation Hearing.

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan (the "**Confirmation Hearing**"). The Confirmation Hearing may be postponed from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any postponement thereof. Section 1128(b) provides that any party in interest may object to Confirmation of the Plan. Any objection to Confirmation must be made in writing and filed with the Bankruptcy Court and served on the following parties, together with a certificate of service:

/ / /

/ / /

/ / /

/ / /

/ / /

Case: 10-60020  Doc# 117  Filed: 09/22/11  Entered: 09/22/11 17:32:50  Page 47 of
53

John Walshe Murray
Murray & Murray
A Professional Corporation
19400 Stevens Creek Boulevard, Ste. 200
Cupertino, CA 95014-2548
Fax: (650) 852-9244

United States Trustee
Nanette Dumas
280 South First Street, Room 268
San Jose, California 95113-0002
Fax No. (408) 535-5532

Objections to Confirmation of the Plan are governed by Bankruptcy Rule 9014.

**21.2. <u>Requirements for Confirmation of the Plan.</u>**

At the Confirmation Hearing, the Bankruptcy Court must confirm the Plan if it determines that all of the requirements of Section 1129 of the Bankruptcy Code have been satisfied. The applicable requirements are as follows:

(a) The Plan complies with the applicable provisions of the Bankruptcy Code;

(b) The Debtor has complied with the applicable provisions of the Bankruptcy Code;

(c) The Plan has been proposed in good faith and not by any means forbidden by law;

(d) Any payment made or to be made by the Debtor, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Case, or in connection with the Plan and incident to the Case, has been approved by, or is subject to the approval of, the Court as reasonable;

(e) The Debtor have disclosed the identity and affiliations of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the Plan; and the appointment to, or continuance in, such office of such individual, is consistent with the interests of holders of Claims and Interests and with public policy;

Case: 50023 Doc# Filed: 09/22/11 Entered: 09/22/11 Page 48 of 53

and the Debtor have disclosed the identity of any insider that will be employed or retained by the Reorganized Debtor, and the nature of any compensation for such insider;

(f) With respect to each class of impaired Claims or Interests, each holder of a Claim or Interest of such class either (a) has accepted the Plan, or (b) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code;

(g) Subject to the "cramdown" provisions of the Bankruptcy Code discussed in Section 12.4 below, each class of Claims or Interest has accepted the Plan;

(h) Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that incurred, Allowed Administrative Claims will be paid in full on the Effective Date of the Plan and that Allowed Tax Claims will be paid in full over a period not longer than five (5) years from the Petition Date;

(i) If a class of Claims is impaired under the Plan, at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class;

(j) Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan;

(k) All fees payable under section 1930 of title 28, as determined by the Court at the Confirmation Hearing of the Plan, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan; and

(l) All transfers of property of the Plan are to be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of

property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

### 21.3.  Compliance with Confirmation Requirements.

The Debtor believes that all of the foregoing requirements have been or will be met prior to the Confirmation Hearing.  Specifically, the Debtor believes:  (1) the Plan is in the best interests of Creditors, in that holders of all Allowed Claims will receive payments under the Plan having a present value as of the Effective Date of the Plan in amounts not less than the amounts likely to be received if the Debtor was liquidated in a case under Chapter 7 of the Bankruptcy Code; (2) the Plan will be accepted by sufficient votes in each impaired class or may be confirmed under the cramdown standards of Section 1129(b) even if sufficient votes are not received; and (3) the Plan is feasible in that the Debtor will have sufficient cash available at all times to fund the Plan pursuant to the Purchase and Sale Agreement and the sale of the Debtor's assets.

### 21.4.  Cramdown.

In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."  A plan "does not discriminate unfairly" against a class if the plan allocates value to that class in a manner consistent with the treatment afforded to other classes with similar legal claims against the Debtor. "Fair and equitable" has different meanings for the holders of secured and unsecured claims, and for the holders of interests.

With respect to an unsecured claim, "fair and equitable" means either: (a) each impaired unsecured creditor receives or retains property of a value equal to the amount of its allowed claim; or (b) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

With respect to a class of interests, "fair and equitable" means either: (a) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such

holder is entitled, or the value of such interest; or (b) the holder of any interest that is junior to the interests of such class will not receive or retain any property under the plan on account of such junior interest.

In the event that one or more classes of impaired Claims or Interests rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims or Interests.

## ARTICLE XXII.

### BEST INTERESTS TEST

The Bankruptcy Court must independently determine that the Plan is in the best interest of all classes of Creditors and Interests. The "best interest" test requires that the Plan provide to each dissenting member of each impaired class a recovery that has a present value at least equal to the present value of the distribution which each such Creditor or Interest Holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In performing this analysis, the Bankruptcy Court must determine the amount that would be generated from a Chapter 7 liquidation of the Debtor's assets after deducting the cost of liquidation. The cost of liquidation would include the Trustee's commissions, the Trustee's expenses, fees for counsel and other professionals retained by the Trustee and Administrative Claims. In addition to liquidating the Debtor's assets, the Trustee must also decide whether to litigate certain claims and possibly other litigation matters. Generally, no distribution is made in a Chapter 7 case until all assets of the Bankruptcy Estates and all claims have been liquidated, a process that often can take many months and sometimes years. This delay could further impair the value of any distribution made to holders of Claims under a Chapter 7 liquidation.

In this case, the Debtor's assets will remain valuable only if the Debtor is able to continue the profitable operation of its Restaurant. A Chapter 7 trustee would have no ability to continue to operate the Restaurant in the ordinary course and would need to market the Restaurant after the Restaurant ceased operations which would vastly reduce the value of the Restaurant as a going concern. If the Chapter 7 trustee conducted a fire sale of the Debtor's individual assets of used restaurant inventory, furnishings and inventory very little value would be realized. In other words, a

Case: 09-60023 LCPB Doc #: 53 Filed: 09/22/11 Entered: 09/22/11 DATED SEPTEMBER 22, 2011
53

1  fire sale would realize significantly reduce the value of the Debtor's assets.

2  On the other hand, barring unforeseen Claims, Confirmation of the Plan will enable the

3  Reorganized Debtor to timely distribute proceeds. By continuing to operate the Restaurant and

4  distribute the proceeds in accordance with the Plan, the Debtor believes that a higher return can be

5  realized for the Creditors.

6  The operations of the Restaurant require attention to matters by management familiar with

7  the Debtor in order to maximize the value of the Estate and return to Creditors. Only through

8  management knowledgeable with the Debtor's operations, will the Debtor be able to maximize value

9  of its assets.

10  The profits generated from the operation of the Restaurant will be distributed in accordance

11  with the priority scheme set forth in the Bankruptcy Code. The Debtor, therefore, believes that the

12  distributions made pursuant to the Plan will achieve at least the same results (or better) as would

13  occur in the conversion of the Case to Chapter 7. The result can be achieved without the duplication

14  of administrative costs that would result from the appointment of a Chapter 7 Trustee and the

15  employment of additional professional persons, and the delay attendant with the administration of

16  the assets in Chapter 7.

17  Those Creditors who are impaired under the Plan, therefore, are receiving, at a minimum, the

18  equivalent of what they would receive if liquidation was completed in a Chapter 7 case. The Debtor

19  believes that the Creditors will fare much better should reorganization be achieved in Chapter 11

20  under the Plan.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

JWM/RRL
K:\...\...LCP\Disc...and Plan\DS Sept 22\DS Sept v 09-22                    46
Case: 10-00...  Doc#: ...  Filed: 09/22/11    Entered: 09/22/... 12:...:...  Page 22 of
53

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED SEPTEMBER 22, 2011)

# ARTICLE XXIII.

## POST-CONFIRMATION MANAGEMENT

On and after the Effective Date, Timothy Reynders shall serve as the Reorganized Debtor's Chief Executive Officer and director. As Chief Executive Officer, Mr. Reynders will receive a salary of $10,000 per month. He will receive no compensation for his service as a director. Masumi Osaki will serve as the Reorganized Debtor's only other director. She will not be compensated for such service. Timothy Reynders and Masumi Osaki currently own 74.172% of Interests in the Debtor.

Dated: September 22, 2011

Pampas Palo Alto, LLC
A CALIFORNIA LIMITED LIABILITY COMPANY

By: /s/ Timothy Reynders
Timothy Reynders
Responsible Individual

MURRAY & MURRAY
A PROFESSIONAL CORPORATION

By: /s/ John Walshe Murray
John Walshe Murray
Attorneys for Debtor

Case: 30-029 Doc#: Filed: 09/22/11    Entered: 09/22/11    Page 53 of
53