JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
RACHEL RAGNI LARRENAGA (241061)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: rfranklin@murraylaw.com
Email: rragni@murraylaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>**PAMPAS PALO ALTO, LLC,**<br>A California Limited Liability Company,<br><br>Debtor.<br><br>529 Alma Street<br>Palo Alto, California 94301<br><br>Employer Tax I.D. No.: 02-0806958 | Case No. 11-50029-CN-11<br><br>Chapter 11<br><br><u>Disclosure Statement Hearing</u><br><br>Date: October 27, 2011<br>Time: 11:00 a.m.<br>Place: United States Bankruptcy Court<br>280 S. First St., Room 3070<br>San Jose, CA 95113<br>Judge: Honorable Charles Novack<br><br><u>Hearing on Plan Confirmation</u><br>Date: TBD<br>Time: TBD |

### EXHIBIT "A" TO

### <u>DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION</u>
### (DATED SEPTEMBER 22, 2011)

# BBG, Ltd.

600 Ridge Road  
Tiburon, CA 94920

Phone 415/435-4506  
Facsimile 415/435-7483

Via Email:

May 29, 2011

Timothy Reynders  
Pampas Palo Alto  
529 Alma Street  
Palo Alto, CA 94301

Dear Tim:

You have asked me provide you with a suggested selling price for Pampas Palo Alto restaurant. You have provided me with certain financial statements for 2008, 2009, 2010 and first quarter of 2011 as well as a copy of the lease.

As you know, my company, BBG, Ltd., specializes in leasing and sales of restaurants throughout the nine county San Francisco bay area. Included with this letter is a updated version of a letter I send to prospective clients with regard to my background and capabilities. BBG, Ltd. has developed and maintains extensive databases for people in the restaurant industry. These databases create a very powerful direct marketing system unmatched by anyone else in the industry. I refer you to the attached letter for more information on BBG, Ltd. and my background.

There are two basic approaches to valuing a restaurant. One is the going concern approach and the second is the asset sale approach. The asset sale approach is typically used when positive cash flow does not exist. For Pampas I have looked at both approaches and believe the going concern approach valuation provides a reasonable basis for creating a sales price.

The going concern approach is based on adjusted cash flow and includes all of the business assets in the sale. This approach uses the annual cash flow (EBITDA) with certain adjustments. One can either start with net income and add back interest on loans, depreciation, amortization and other non-cash deductions or one could begin with EBITDA which takes into consideration the non-cash items. An adjustment is made by adding back what one owner takes out of the business including salary, medical, automobile expense and any other expense which benefits the owner and is paid by the restaurant. Under the going concern approach the sales price for the business is usually one and one-half to three times the adjusted cash flow.

The asset approach contemplates a sale of the business assets including the lease, leasehold improvements (FF&E), liquor license and other assets. The financials play a very minor role in the asset approach. Here the value of assets determines the sales price for the business.

A quick review of the lease reveals a few issues which need to be considered. Pampas is now in the fourth year of the lease. Rent initially was $21,300 plus additional rent of $3,093.33 for a total of $24,393.33 per month. The profit and loss statement you provided for 2011 shows rent at $27,286.11. I note April shows $43,954.05. I have no idea why there is a different rent for April 2011. The lease provides for a management fee in the amount of one percent of the base rent and fifteen percent of the additional rent charges excluding tax, insurance and utilities. In the first year the first part of the management fee would have been $2,556; however, based on the information provided I am unable to calculate the second part of the management fee. Adding the management fee it appears the total rent including management fee would be approximately $30,000 per month.

The lease contains a use clause which limits the use by a prospective buyer to Churrascaria style Brazilian grille. It would be very important to seek approval from the landlord to allow any legal restaurant use. Otherwise a sublessee/assignee would have to operate a Churrascaria style Brazilian grille. No other cuisine is permitted unless the landlord agrees to accept a different cuisine.

Paragraph 21(A) of the lease allows landlord to have a 30 day period to decide if they want to go along with a proposed subtenant/assignee. Landlord can elect to take over the space through a notice of termination procedure. Tenant can rescind the proposed transaction within 10 days of notification of landlord's decision to recapture the space. This paragraph reaffirms the requirement that new tenant conform to the use clause.

Paragraph 47(B) provides that the option is personal but will be exercisable if the transfer is a Permitted Transfer.

These issues need to be dealt with in advance with the landlord.

You have advised me that the trademarked name and other related intellectual property is not included in the contemplated sale of the business.

You have also advised that Pampas is in litigation with the contractor that built out the restaurant and as a result has incurred significant legal fees and related costs which are extraordinary.

From the limited financial statements I have learned the following. 2008 appears to have been a break even year.

Timothy Reynders
Pampas Palo Alto
May 29, 2011
Page 3 of 4

For the 2009 profit and loss statement I assume the professional fees of $329,204 are the legal fees for the contractor lawsuit. If so, then it appears that the net cash flow excluding the impact of legal fees would be approximately $261,534. I have not added back any amounts taken out of the business by one of the owners as I am unable to determine benefits by owners for 2009.

For the 2010 profit and loss statement shows legal fees and consultant fees of about $1,379,355 which I have credited in my analysis. The result for 2010 show positive cash flow excluding legal fees and consultant fees of $58,142. Again I assume there was no salary or any benefits by one of the owners in 2010.

You provided me with the profit and loss for the first four months of 2011. Although you told me that you have been taking $10,000 per month, the first four months profit and loss shows a salary of $10,000 in January and February but no salary in March and April. In February it shows $7,632 in legal fees. The first four months of 2011 profit and loss shows net cash flow of $113,812 to which I have added back the salary mentioned above and the legal fees also mentioned above. Adjusted net cash flow comes to $141,444 for the first four months of 2011. I added $28,453 for the each of the remaining eight months or $227,624 plus $113,812 for the first four months for a total of $341,436 for 2011 as a projection for adjusted net cash flow in 2011.

|  | Gross Sales | Adjusted Cash Flow |
|---|---|---|
| 2008 | 3,106,799 (annualized) | B/E |
| 2009 | 2,888,197 | 261,534 |
| 2010 | 3,153,021 | 58,142 (adjusted) |
| 2011 | 3,442,077 (annualized) | 341,436 (annualized) |
| Average | 3,147,523 | 220,371 (2009, 2010, 2011) |

Based on the financial information presented to me the above table represents the gross sales and adjusted cash flow for the each of the years since commencement of business. Business commenced in April 2008. I annualized the 2008 gross sales amount. The adjusted cash flow was at break even for 2008. I also looked at the average gross sales and the average adjusted cash flow (for years 2009, 2010 and 2011 annualized).

There is a well located restaurant for sale on University Avenue with 4,600 square feet on the ground floor and 1,600 square feet in a basement which is used for storage. Asking price is $500,000. I cannot identify the site in this letter because the seller/owner requires a confidentiality agreement in place before identifying the site. When compared to Pampas, this restaurant is in a much superior location with significant foot traffic neither of which exists at Pampas. Although there has been significant interest in this restaurant the major difficulty is the high total rent. Based on information provided to me I believe the fair market lease rate for restaurants on University Avenue is $5.00 to $5.50 per square foot, NNN. The Pampas location is in a secondary location compared to the University Avenue site. Nevertheless, even though the University Avenue site is

considered one of the best sites in Palo Alto and on the entire Peninsula the high total rent has dampened the enthusiasm of prospective buyers. I mention this site for a couple of reasons. The lesson learned is the high total rent makes this exceptionally well located restaurant difficult to sell. Yet I have had 92 responses to my marketing of this restaurant with two offers on the table and a third expected this week. I believe the total Pampas rent will be considered high by prospective buyers in spite of the per square foot rate. Nevertheless I believe there will be interest which can be generated through marketing by my company.

Typically restaurateurs like to keep their rent at no more than six percent of their gross sales. For 2011 the rent paid by Pampas is approaching ten percent of gross sales. Using the traditional formula of six percent in order to justify the current rent requires monthly gross sales of $450,000 or $5,400,000 annually. Although rent at about $3.30 per square foot (assuming 8,200 square feet of space) may seem reasonable the existing total rent nevertheless requires the gross sales in excess of $5.0 million in order for the rent to be within an acceptable range.

One more factor should be considered. A non-Brazilian concept could require major changes in the kitchen. Any prospective buyer has to budget not only for the purchase price of the business but needs to budget enough to allow for revamping the kitchen.

With the background and information provided above it is my opinion that the deal making price would be somewhere between one and two times adjusted cash flow or $220,000 to $440,000. I suggest starting with an asking price of $495,000.

The commission charged by BBG, Ltd. is ten percent of the sales price.

Please let me know what further information you require or if you require clarification of anything set forth in this letter.

Sincerely,

BBG, Ltd.

BY: /s/ Bruce M. Breitman
    Bruce M. Breitman
    President and CEO